39 Wn.2d 688 (1951)
237 P.2d 781
HAMILTON TRUCKING SERVICE, INC., Respondent,
v.
THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.[1]
No. 31787.
The Supreme Court of Washington, Department One.
November 23, 1951.
Elliott & Lee and Frank Hunter, for appellant.
Lenihan & Ivers, for respondent.
GRADY, J.
This action was brought by respondent to recover a loss sustained in the carriage of machinery, which it was claimed was covered by an insurance policy issued by appellant.
On March 31, 1948, respondent was transporting a gang saw consigned to Thompson Falls, Montana. The saw had been loaded on the flat bed of a truck. The height of the load from the ground level to the top of the saw was twelve feet and three inches. The driver of the truck attempted to go through an underpass in Spokane. The clearance was less than the height of the truck and its load. The saw was damaged by coming in contact with the framework of the underpass. The respondent carrier paid the owner of the saw for the damage.
At the trial of the action, the parties entered into a stipulation as to some of the material facts, and also agreed that a rider added to the insurance policy, referred to as endorsement No. 1, had no application to the facts of the case. Later, by order of the court, the parties were relieved of the effect of the latter part of the stipulation. In our review of the judgment we shall consider the endorsement as a part of the policy.
The trial judge was of the opinion that, when the parties made their contract of insurance, taking into consideration both the policy and the endorsement, they had in contemplation indemnity for damage to the cargo carried on the truck if such cargo came in contact with some outside object.
The material parts of the insurance policy and endorsement No. 1 are as follows:
*690 "This policy covers the legal liability of the Assured as a carrier for direct loss or damage from perils hereinafter specified to shipments of lawful goods consisting of BLDG. MATERIAL AND BLDG. MACHINERY, in or upon the following described motor truck ... in the service of the Assured, ...
"This Policy Applies to the Following Perils ...
"(c) Accidental collision of the motor truck or trailer with any other automobile, vehicle or object; ..."
"(a) In consideration of the rate charged for the issuance of the policy to which this endorsement is attached, it is hereby understood and agreed that the policy is extended to cover the legal liability of the Assured as a carrier for direct loss or damage to shipments of lawful goods (hereinbefore described) from collision of the contents on Assured's vehicle with any other vehicle or object due to overwidth or overheight of load as may be defined by law, it being warranted the Assured will operate under special statutory requirements of the State Laws."
The question to be decided is whether the collision between a part of the load on the truck with some other object while in the process of transportation was within the risks covered by the policy.
The policy has a very limited risk coverage. By its plain terms, the risks assumed are accidental collision between the truck upon which the property is being carried and some other object, and a collision between the property covered and some other object due to the width or height of the load being in excess of that limited by law. Rem. Rev. Stat., Vol. 7A, § 6360-48 [P.P.C. § 292-3], fixes the maximum height of a load at twelve feet and six inches above the level surface upon which the vehicle stands. The load on the respondent's truck was twelve feet and three inches in height. Endorsement No. 1, being limited to overheight loads, did not cover the load on respondent's truck.
The appellant contends that the language used by subdivision (c) quoted above is not ambiguous; that it expresses the intention of the parties; that no rules of interpretation or construction need be applied, and that the risk coverage is limited to damage to property transported by reason of the truck on which it is loaded colliding with some *691 other object. In support of its position appellant cites and relies upon Mendelsohn v. Automobile Ins. Co., 290 Mass. 228, 195 N.E. 104, and Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188, 278 N.W. 374. These cases support the position taken by appellant.
The respondent, in support of the judgment, cites and relies upon cases from seven states in all of which the courts have decided that, in similarly worded policies, the risk coverage included both collision of the vehicle of conveyance and also collision of the load with another object. We shall not make an analysis of such cases as they follow substantially the same pattern. Among such cases are Gould Morris Electric Co. v. Atlantic Fire Insurance Co., 229 N.C. 518, 50 S.E. (2d) 295, and C. & J. Commercial Driveway v. Fidelity & Guaranty Fire Corp., 258 Mich. 624, 242 N.W. 789. The courts did not use precisely the same reasoning in arriving at their respective conclusions. In general, they took the position that, even though the language used in the policy then under consideration was not ambiguous, nevertheless the use of certain well-established rules of interpretation and construction of insurance contracts was warranted, and that the intent of the parties to the insurance contract should be ascertained. The thought was expressed that manifestly the purpose of the insurer was to protect the insured against loss or damage to his property while being transported, and with such thought as a foundation the theories advanced were that the risk coverage provision was capable of two interpretations and the one most favorable to the insured should be adopted; that inasmuch as the policy was prepared by the insurer it should be construed against it; that to confine the risk coverage to collision of the vehicle with some object would reach an absurd result and one not contemplated by the parties; that the word "collision" was intended as descriptive of the way and means of sustaining loss rather than a limitation of liability.
We have not adopted the lines of reasoning found in the cases cited by respondent in order to determine the intent of the parties, or what they may or must have contemplated *692 when making an insurance contract with reference to the extent of the risk coverage when it was clear that the words were used in their ordinary sense or meaning, nor when the language used was plain and unambiguous. We have resorted to familiar rules of interpretation of words and construction of language used in such contracts in order to ascertain the intent of the parties, or what they contemplated, when it appeared that certain words were used in a special or restricted sense, were susceptible of different meanings according to the way in which they were used, or when the language used was of doubtful import or ambiguous.
[1] We have taken the position in such matters that a rule of construction should not be permitted to have the effect to make a plain agreement ambiguous and then construe it in favor of the insured. Our many cases on the subject of interpretation and construction of insurance contracts may be found in volume 7 of the Washington Digest and Cumulative Annual, Insurance, Key No. 146. We see no occasion to engage in a review of, or to quote from them. The words of the part of the policy under consideration must be accorded their ordinary meaning. The language used is plain and unambiguous. There is nothing to interpret or construe. We cannot avoid feeling as we read the cases cited by respondent that those courts have created ambiguities where none existed and have then used rules of construction to determine the intent of the parties and what they must have contemplated, thus enlarging the risk coverage of the insurance policies under consideration.
[2] We are of the opinion that the insurance policy before us has a limited coverage risk, and that the damage to the property being carried on the truck not having been caused by the truck colliding with any other object, the loss is not covered by the policy.
The judgment is reversed, and the cause remanded for the entry of one dismissing the action.
SCHWELLENBACH, C.J., MALLERY, DONWORTH, and WEAVER, JJ., concur.
NOTES
[1] Reported in 237 P. (2d) 781.