78 So.2d 917

**TRANS–CONTINENTAL MUTUAL INSURANCE COMPANY, Inc., et al.**

v.

**La Trelle HARRISON.**

**3 Div. 717.**

Supreme Court of Alabama.

March 24, 1955.

L. H. Walden and Rushton, Stakely & Johnston, Montgomery, for appellants.

Jones, Murray & Stewart, Montgomery, for appellee.

MAYFIELD, Justice.

This is an appeal from the Circuit Court of Montgomery County, Alabama, in equity, overruling respondent-appellant's demurrer to complainant-appellee's bill of complaint.

This is a statutory equitable action by an injured party, La Trelle Harrison, against the insurer of the judgment-debtor to reach and apply insurance money to the satisfaction of the judgment, pursuant to § 12, Tit. 28, Code of Alabama 1940. See United States Casualty Company, Inc., v. Early Wilson, ante, p. 32, 76 So.2d 506.

■■ · The appellant's single assignment of error—"The court erred in overruling defendant's demurrer to the bill" is sufficient to present the error complained of for review. It is not necessary to enumerate in separate assignments each, or any, ground of demurrer. Cahaba Coal Co. v. Elliott, 183 Ala. 298, 62 So. 808. A demurrer is an entity of pleading. Cahaba Coal Co. v. Elliott, supra; United States Casualty Company, Inc., v. Early Wilson, supra.

The original judgment against the insured, Grady W. Gilley, was recovered by the plaintiff, La Trelle Harrison, in the State of Arkansas. A copy of this judgment was attached to the complainant-appellee's complaint, and contains a detailed finding of fact upon which the judgment was based.

The insured Gilley (the defendant in the original case in Arkansas) and his friend Williams were returning from a joint pleasure venture in the early hours of the morning accompanied by two young ladies. Williams, at the request of Gilley, was driving the automobile. Gilley and his "date" were sitting in the rear seat of the automobile. While chauffering under the direction and control of the insured, Williams went to sleep at the wheel and allowed the car to leave the road and overturn. Williams met his death in the crash,

and the complainant-appellee, Miss La Trelle Harrison, suffered grievous injuries.

The trial court in Arkansas found:

"That the defendant, Gilley (the insured), negligently and carelessly permitted· and·instructed his agent and chauffeur Paul E. Williams to drive the car after the defendant had noticed his chauffeur dozing at the wheel. That Paul E. Williams drove the automobile under the direction of and in company with the defendant, at a high, excessive and uncontrollable rate of speed and went to sleep while so driving. That by reason of the *separate* and *concurrent* negligent acts and omissions of defendant Grady W. Gilley, plaintiff La Trelle Harrison suffered and sustained the following injuries through no fault or carelessness on her part."

The learned solicitors for the parties in oral argument before this Court agreed that the single issue presented by this appeal was the construction of the word "operated" within the meaning of a restrictive endorsement to the policy of liability insurance held by Gilley and issued by the respondent-appellant Insurance Company.

That is to say, whether or not the insurance coverage purchased was broad enough to cover the factual situation of this accident, or whether it was necessary for the insured to be manually and physically driving the automobile at the time of this unfortunate accident for the liability policy to extend its coverage to the passenger La Trelle Harrison.

In deference to the position of counsel for both parties, stated in their briefs and arguments and reiterated in their oral argument, that this appeal presents the sole question formerly noted; we will inject no other issues into this opinion. Wherever possible, cases should be reviewed by this Court on the issues conceived by the contending parties in the trial court and the questions presented to, and determined by, the trial judge.

This is a case of first impression in Alabama. Several of our sister States have reviewed this problem and reached divergent results.

For direct authority on this principal question, the appellant relies on the cases of Witherstine v. Employers' Liability Assur. Corp., 235 N.Y. 168, 139 N.E. 229, 28 A.L.R. 1298; Twogood v. American Farmers Mut. Auto. Ins. Ass'n, 229 Iowa 1133, 296 N.W. 239; Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 2 S.E.2d 303; Morrow v. Asher, D.C., 55 F.2d 365; O'Tier v. Sell, 252 N.Y. 400, 169 N.E. 624; and the following texts: Appleman Insurance Law and Practice, Vol. 7, Sect. 4314, p. 82; Blashfield Cyclopedia of Automobile Law & Practice, Vol. 6, Sect. 3941; American Jurisprudence, Vol. 5, Sect. 506, p. 790.

As direct authority for their contention, appellee cites: Snyder, for Use of Brooks v. United States Mutual Insurance Company, 312 Ill.App. 337, 38 N.E.2d 540; Arcara v. Moresse, 258 N.Y. 211, 179 N.E. 389; Neel v. Indemnity Insurance Co., 122 N.J.L. 560, 6 A.2d 722; State Farm Mutual Auto Insurance Co. v. Coughran, 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970.

By way of analogy the appellee also cites cases dealing with the construction of the word "operate" in cases dealing with service of process, imputed negligence, negligence cases, railroad cases and references to the Standard Dictionaries.

Appellant seeks comfort in the usage of the word "operate" as construed in many sections of the Motor Vehicle Law of Alabama to signify the personal act of physically working the mechanism of the automobile.

The Witherstine case, supra, is heavily relied on by the appellant. The rationale of this opinion seems to have been strongly influenced by the definition which the verb "operated" has acquired in the State of New York when read in connection with the New York Highway Laws. We here observe, that in the main

Highway and Motor Vehicle Laws are penal in their character and are subject to a rigorous and restrictive interpretation. The application of these statutes to other persons cannot be extended by intendment. Unless a criminal statute "spells out" the liability of the violators, a citizen cannot be subjected to punishment under a Criminal Code.

Judges McLaughlin and Crane dissented from the holding in the Witherstine case, supra [235 N.Y. 168, 139 N.E. 231], stating:

"I dissent. One of the common and ordinary meanings of the word 'operate' is 'to direct or superintend the working of.' Century Dictionary. The defendant prepared the policy and used this word. Therefore its use should be given the broadest meaning in favor of the plaintiff. The prevailing opinion proceeds upon the theory that it is used in a restricted sense. The meaning thus ascribed to it I think too narrow, and for that reason I vote to affirm."

In the case of Twogood v. American Farmers Mut. Auto. Ins. Ass'n, supra, the policy exclusion prohibited driving by an unlicensed person, or while being operated or *manipulated* by a person prohibited from driving, etc. This case is easily distinguishable from the case at bar. The two terms "operated or manipulated" taken together are much stronger than the wording of the exclusion to the policy here under consideration. Appellant's counsel makes the following telling point—although we are inclined to think he overstates his argument:

"Endorsements are placed on insurance policies to nullify provisions contained therein, to amplify provisions contained therein or to restrict provisions contained therein. It is obvious that the endorsement placed on this policy was for the purpose of restricting the definition of the insured. Unless the endorsement is given the construction contended for by the appellants, it has no force or effect, although a part of the policy contract. The policy as originally written covered the negligent acts of all persons operating the automobile with permission.

"The endorsement stating that the coverages are in force only when the vehicle is being operated by the named insured or a member of his immediate family has been attacked by appellee as having no restrictive effect whatsoever."

In answer to this argument, the appellee states that if the intent of the exclusion was to restrict the coverage to the actual driver at the wheel, that the verbiage of the exclusion should have been "drive" rather than the more general and somewhat ambiguous term "operate".

■ Without further burdening this opinion by a detailed analysis of the opposing authorities of our sister States, we conclude that these cases cannot be reconciled. We further find an ambiguity in the wording of the restrictive endorsement to the insurance policy.

To resolve this controversy, we therefore seek the aid of and apply the well-established and recognized rules of construction pertinent to written instruments, and particularly to policies of insurance.

■ If an insurance contract is so drawn as to be equivocal, uncertain or ambiguous, or to require interpretation because fairly susceptible to two or more different interpretations, the one will be adopted, which, if consistent with the objects of insurance, is most favorable to the insured. Alabama Gold Life Ins. Co. v. Johnston, Adm'r, 80 Ala. 467, 2 So. 125; McConnell-White-Terry Realty & Ins. Co. v. Fidelity & Deposit Co. of Maryland, 212 Ala. 339, 102 So. 617; Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 100 So. 904, 35 A.L.R. 1018; Baltimore American Ins. Co. v. Reynolds, 253 Ala. 104, 43 So.2d 1. To demonstrate the universality of this fundamental rule of construction, we quote from Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 2 S.E.2d 303, 305, a case cited by appellant in their brief:

"The text writers and the cases from the appellate courts of nearly all of the states accentuate the rule that ambiguous and doubtful language must be interpreted most strongly against the insurer. They stress the rule that insurance policies are to be liberally construed in favor of the assured and exceptions and exclusions are to be strictly construed against the insurer."

In considering the "reason behind the rule", this Ayres case quotes with approval, Vol. 1, Sect. 118a, page 402, Cyclopedia of Insurance Law:

" 'Various reasons have been assigned for the rule of construction against the insurer and in favor of the insured. Perhaps the most generally assigned reason for the rule is, in effect, that to hold otherwise, without an absolute necessity therefor, would tend to subvert the very object and purposes of insurance, which is that of indemnity to the insured in case of loss or the payment of money on the happening of a contingency, which indemnity should be effectuated, rather than defeated, to which end the law makes every rational intendment, so as to give the fullest protection possible to the interests of the assured. In fact, where two interpretations equally fair may be made, that which allows a greater indemnity will prevail. And since indemnity is the ultimate object of insurance, the construction should be in favor thereof, and likewise for the benefit of the trade, for, in case of doubtful construction, insurance is regarded as a contract unberrimae (sic) fidei. And every presumption in favor of good faith will be indulged in in construing policy clauses, the presumption being that an insurance company, in choosing the language of its policy, did not intend any jugglery or equivocation. This is in accordance with the rule that policies of insurance create reciprocal rights and obligations which require the utmost good faith by both parties. And the strictum jus or apex juris is not to be laid hold on. And the reason for the rule of construction against the insurer is that policies of insurance are made on printed forms carefully prepared in the light of wide experience, by experts employed by the insurer, and in the preparation of which the insured has no voice. Still another version of this reason is that the rule is based on the fact that insurance contracts are usually prepared by the insurer, who seeks so to frame them as to limit their scope, so that it is only fair that any doubt as to the meaning of the language used should be resolved in favor of the insured, in order to avoid the injustice that would result from a narrow and technical construction. That is, contracts of insurance couched in language selected by the company for its own purpose, and printed and prepared by skilled experts, and offered to the lay public, must, when ambiguous, be construed in favor of the assured, or, in other words, that since the language of the policy is that of the insured, it is both reasonable and just that its own words should be construed most strongly against it. Also, that insurance contracts are to be interpreted, except, perhaps, where the language used follows a statutory form or provision, in the light of the fact that they are drawn by the insurer, and are rarely, if ever, understood by the people who pay the premiums, * *.' "

This contract of insurance was written in language chosen by the insurer. It is generally known that some such contracts are drafted by legal experts in this field after a careful scrutiny of the decisions affecting their chosen verbiage throughout the English speaking world. Therefore, if such contract is open to construction it must be construed most strongly against the insurer and liberally in favor of the contention of the insured. Sovereign Camp, W.O.W. v. Adams, 204 Ala. 667, 86 So. 737; St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 100 So. 904, 35 A.L.R. 1018; Southern Ins. Co. v. Wilson, 214 Ala. 373, 108 So. 5; Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425; McDowell v.

United States Fidelity & Guaranty Co., 260 Ala. 412, 71 So.2d 64.

Further, as has been stated, the public policy of this state requires the broadest possible coverage consistent with the intentions of the parties and the contract between the insured and the insurer.

The appellant takes as his III proposition:

"The true intent governs insurance contracts the same as others. While doubtful terms are construed in favor of the insured, no strained construction should be indulged to raise doubt."

citing Home Loan & Finance Co. v. Fireman's Fund Ins. Co. of San Francisco, Cal., 221 Ala. 529, 129 So. 470.

While we approve this statement as a principle of construction, we do not find in the light of the divergent authorities cited by the able solicitors and the interpretations given to the word "operate" by standard dictionaries that the appellee's contention as to the proper interpretation of the word "operate" called for a strained construction.

As this is a case of first impression in Alabama, we here inject a word of caution for the benefit of the bar and litigants. The finding of fact of the Arkansas court was to the effect that the insured was physically present in the automobile directing the movements and directions and exhorting the driver to an unlawful rate of speed. We, therefore, hold that the trial court correctly found that the insured was "operating" the automobile within the meaning of the exclusive endorsement to this policy of insurance. We decide nothing else.

The ruling on demurrer of the lower court is, therefore, due to be and is hereby affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, and GOODWYN, JJ., concur.