177 So.2d 102

**TRINITY UNIVERSAL INSURANCE COMPANY**

v.

**ROBERT P. STAPP, INC.**

**6 Div. 745.**

Supreme Court of Alabama.

Oct. 17, 1963.

Rehearing Denied July 15, 1965.

Sadler, Sadler, Sullivan & Herring and W. J. Sullivan, Jr., Birmingham, for appellant.

Rives, Peterson, Pettus & Conway, Birmingham, for appellee.

**210**

LIVINGSTON, Chief Justice.

This suit is on a policy of insurance issued by the defendant corporation, the appellant here, to the plaintiff corporation. It is stipulated by the parties that the premium had been paid and that the policy was in force and effect on January 30, 1959, the date of the accident with which we are here concerned. The policy was one of cargo insurance issued specifically to cover certain dump truck bodies which were to be transported by the plaintiff; it did not purport to cover plaintiff's truck. The policy insured plaintiff against damages to the cargo caused by fire, tornado, windstorm, collision, and various other mishaps. The clause we are concerned with here is the collision clause, which reads as follows:

"THIS POLICY INSURES: Against loss or damage directly caused by: * * *

"(b) collision, i. e., accidental collision of the vehicle with any other vehicle or object (the striking of curbing or any portion of the roadbed or the striking of rails or ties of street, steam or electric railroads, or contact with any stationary object in backing for loading or unloading purposes, or the coming together of trucks and trailers during coupling or uncoupling, shall not be deemed a collision);"

On the date in question, the plaintiff's truck driver, Mr. Forney D. Naylor, had picked up four tail gate assemblies for dump-type garbage trucks and was transporting them from Wayne, Michigan, to Madison, Illinois, where he was to pick up the rest of his cargo. He was passing through Champaign, Illinois, at about 9:00 in the morning when the accident occurred. The highway was covered with ice and snow. Mr. Naylor had just made a right-angle turn when he saw before him a railroad underpass (or overpass) about 150 feet from the turn. Realizing that there was insufficient clearance for his cargo, he applied his brakes. This caused the tractor-trailer to "fish tail," or sway from side to side. The highway sloped slightly downward as it approached the underpass, and in addition to the usual curbstone, a concrete wall about three feet high arose from immediately behind the curbstone; the sidewalk was located on top of this wall. As the trailer swerved from side to side, one of its rear wheels struck something, possibly the wall, on the right side of the road, about 75 feet from the underpass. The effect of this, if any, upon the operation and control of the tractor-trailer is not clear. The driver testified at one point that it lessened the fish-tailing, and at another point that he had no doubt that he could have stopped before reaching the underpass had the wheel not struck something. He had succeeded in bringing the truck under partial control when it went under the underpass. As it did so, three of the tail gate assemblies struck the underpass and were damaged. The tractor-trailer itself did not strike the underpass in any way.

The amount of damages was not disputed. In the court below, the trial judge gave the affirmative charge with hypothesis in favor of the plaintiff, explaining that he thought the collision clause of the policy covered the accident in question. It was his opinion that the term "vehicle" as used in the phrase "collision of the vehicle with any other vehicle or object" embraced not only the bare vehicle itself, but also the loaded vehicle, so that a collision of the cargo would fall within the terms of the policy. Appellant assigns as error the giving of this charge.

As was stated by the trial judge, there are no Alabama cases directly in point;

other jurisdictions which have been faced with the problem are well divided.

It is well settled that generally insurance policies, being framed by the insurer, are to be construed most favorably to the insured. Colonial Life & Accident Ins. Co. v. Shotts, 267 Ala. 525, 103 So.2d 181; McKee v. Exchange Insurance Ass'n., 270 Ala. 518, 120 So.2d 690. And where a policy is fairly susceptible to different interpretations, it will be construed most strongly in favor of the insured. Trans-Continental Mutual Ins. Co. v. Harrison, 262 Ala. 373, 78 So.2d 917, 51 A.L.R.2d 917. However, when the language of an insurance policy is clear and unambiguous, it must be construed as it reads, and courts are not at liberty to raise doubt where none exists. Central Mutual Ins. Co. v. Royal, 269 Ala. 372, 113 So.2d 680, 72 A.L.R.2d 1283; Woodall v. National Life & Accident Ins. Co., 269 Ala. 606, 114 So.2d 889; Chemstrand Corporation v. Maryland Casualty Co., 266 Ala. 626, 98 So.2d 1. A court cannot read something into an insurance policy which is not there. McDowell v. United States Fidelity & Guaranty Co., 260 Ala. 412, 71 So.2d 64.

To hold that a vehicle's cargo was a part of the vehicle for purposes of this policy would do violence to the express and explicit language of the policy. The most recent case in point which we have been able to find is the 1957 Georgia decision of Wolverine Ins. Co. v. Jack Jordan, Inc., 213 Ga. 299, 99 S.E.2d 95. In that case, the insured's truck passed under an overhead bridge and some machinery, which was on the truck, struck the bridge and was damaged. The truck itself did not strike the bridge. With the single exception that the collision clause of the policy in the present case included a parenthetical sentence enumerating certain exceptions to what was to be considered a collision, the collision clauses in the two policies are identical. In reversing the decision of the trial court for the plaintiff, the Supreme Court of Georgia stated:

"* * * The plain words of the policy insure against losses to the insured property which result directly to the property from a collision of the vehicle on which the property is being transported. This is the plain, unambiguous, literal meaning of the policy. The policy does not expressly cover damage to property caused simply 'by collision' or 'by collision of the vehicle or property'; but this particular type of coverage is restricted to loss or damage to the property caused by collision of the vehicle described in the policy. The petition does not allege that the policy does not afford the coverage which the parties intended that it should afford at its inception. The terms of the entire policy do not justify a broadening of the collision coverage by interpretation * * *. The policy does not purport to be an 'all risk' policy, which might justify the view taken by other courts that an enumeration of the perils was merely descriptive of the type of losses covered by such a policy. By its terms the instant policy insures only against specified perils, and the language employed to describe the peril of collision insured against is plain and unambiguous. * * *"

The language quoted is applicable in every respect to the present case.

The Supreme Court of Washington in the case of Hamilton Trucking Service, Inc. v. Automobile Ins. Co. of Hartford, Conn., 39 Wash.2d 688, 237 P.2d 781, was considering a case similar in all pertinent respects to the one at bar. That court reversed the judgment of the lower court and held that the policy of insurance did not cover an accidental collision of the cargo in which the truck was not involved.

The Supreme Judicial Court of Massachusetts was confronted with this problem in the case of Mendelsohn v. Automobile Ins. Co. of Hartford, Conn., 290 Mass. 228, 195 N.E. 104. It also held the language in

the collision clause in the policy (which was virtually identical to that in the policy with which we are here concerned) was not ambiguous, and held for the defendant insurance company. In addition to the lack of ambiguity, the court added the following:

"* * * The fact that the plaintiff would always have complete control of the manner in which the truck should be loaded and of the height and width of the loads to be placed thereon has some tendency to explain the limitation of liability to a collision of the truck itself as distinguished from its load. * * *"

The Massachusetts Court pointed out a practical reason why the parties, or at least the insurance company, might have wanted and intended to limit the coverage by the specific language of the policy.

Also in accord with the above cases is Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188, 278 N.W. 374. Several other jurisdictions have decided cases which, although they are not directly on all fours with the instant case, seem to us to indicate that if presented with the facts in the case at bar, those courts would follow the rationale of the Washington, Massachusetts, Nebraska and Georgia Courts. Among these are Inman v. Life & Casualty Ins. Co., 164 Tenn. 12, 45 S.W.2d 1073; and Garford Trucking Co. v. Alliance Ins. Co. of Philadelphia, 195 F.2d 381 (N.Y.).

■ Appellee relies on three cases: C. & J. Commercial Driveway, Inc. v. Fidelity & Guaranty Fire Corp., 258 Mich. 624, 242 N.W. 789; Bucks County Construction Co. v. Alliance Ins. Co. of Philadelphia, 162 Pa.Super. 153, 56 A.2d 338; and Gould Morris Electric Co. v. Atlantic Fire Ins. Co., 229 N.C. 518, 50 S.E.2d 295. While it might be possible to partially distinguish these cases from the instant case on the facts, we shall make no attempt to do so. It is clear from reading all the cases in point that there is a definite split of authority on the problem here at issue. It is our opinion that the cases cited by the appellee are not the better reasoned cases. Two of them, the C. & J. Commercial Driveway case and the Gould Morris Electric Co. case, supra, employ the rationale that the mere fact that there is a split of authority among the various jurisdictions indicates that the term "collision of the vehicle" is ambiguous, and that therefore the policy should be construed most favorably to the policyholder. We cannot accept this reasoning. To carry it to its logical conclusion, it would mean that every time two reasonable courts (or even two reasonable men) disagreed on the interpretation of a policy of insurance, the issue should be resolved in favor of the insured. We cannot accept such a theory.

The Supreme Court of Washington, in the case of Hamilton Trucking Service, Inc. v. Automobile Ins. Co. of Hartford, Conn., 39 Wash.2d 688, 237 P.2d 781, had before it all of the cases cited by the appellee here, and, in a very comprehensive opinion, discussed their rationale thoroughly. In that opinion, the court stated:

"We have resorted to familiar rules of interpretation of words and construction of language used in such contracts * * *. We have taken the position * * * that a rule of construction should not be permitted to have the effect to make a plain agreement ambiguous and then construe it in favor of the insured. * * * The words of the part of the policy under consideration must be accorded their ordinary meaning. The language used is plain and unambiguous. There is nothing to interpret or construe. We cannot avoid feeling as we read the cases cited by respondent [the same cases cited by the appellee in the instant case] that those courts have created ambiguities where none existed and have then used rules of construction to determine the intent of the parties and what they must have contemplated, thus enlarging the risk coverage of the insurance policies under consideration." (Parenthetical expression ours).

We are in accord with the above expression of the Washington Court.

Appellant has also assigned other errors. However, due to the probability that the situations out of which they arose may not be prevalent on the subsequent trial of the case, we do not deem it necessary to consider them.

We are of the opinion that the judgment of the lower court should be reversed and the cause remanded.

Reversed and remanded.

HARWOOD, J., concurs; LAWSON and COLEMAN, JJ., concur in the results.