BLUE BIRD BODY COMPANY, INC., and
Insurance Company of North America,
Plaintiffs-Counterdefendants-Appel-
lants,

v.

RYDER TRUCK RENTAL, INC., and Lib-
erty Mutual Insurance Company, De-
fendants-Counterplaintiffs-Appellees.

No. 76–4332.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1978.

James L. Carroll, H. H. Whitworth, Jackson, Miss., for plaintiffs-counterdefendants-appellants.

Junior O'Mara, Jackson, Miss., for defendants-counterplaintiffs-appellees.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Two insurance companies split the settlement cost of two personal injury law suits against the Blue Bird Body Company and a Blue Bird employee. Not content with this perfectly reasonable arrangement, the insurers have staged for our viewing this diversity slugfest in which each seeks to recover back its half of the amount paid in settlement by casting the other in the role of either the sole or the primary insurer. The District Court shifted all of the liability onto one of the insurers. We find both to be primary insurers and reverse, returning the parties to the position they were in prior to undertaking the time and expense of this lawsuit.

### Gearing Up

The facts giving rise to the contested liability are not in dispute. The Blue Bird Body plant in Fort Valley, Georgia usually uses its own drivers and tractor-trailers to move material to other plants, but on occasion leases tractors from Ryder Truck Rental or some other truck-rental firm. One such occasion arose in early August of 1971. Blue Bird had an extra heavy load to move from its Fort Valley plant to its Mt. Pleasant, Iowa plant, so Walt Anderson, general foreman in charge of fleet truck and material handling for Blue Bird, got in touch with Wayne Ozment, the District Manager for Ryder in the Macon, Georgia area. Anderson arranged to lease a tractor from Ryder. He also asked Ozment if Ryder had any drivers available. Ozment stated that Ryder did not furnish drivers, but told Anderson of a driver, James Singleton, that he knew to be available. Ozment and Anderson did not, then or later, discuss arrangements for insurance.

Blue Bird hired Singleton to drive the tractor-trailer unit. Anderson and Ozment agreed that Singleton would pick up the tractor on the morning of August 13. On the afternoon of the 12th, Ozment gave Singleton an eye and a road test and satisfied himself that Singleton was qualified to drive a Ryder tractor.

Singleton picked up the tractor at Ryder as scheduled on the 13th and signed a rental contract on behalf of Blue Bird. Singleton

then drove the tractor to Blue Bird's Fort Valley plant, where he hitched up to a loaded Blue Bird trailer. Singleton left the Fort Valley plant at around noon on the 13th.

Ten miles north of Fort Valley, Singleton stopped at a filling station and picked up a friend, Johnny Highsmith. Unbeknownst to Blue Bird or Ryder, Highsmith accompanied Singleton on the trip, and the two switched off on the driving. For some unknown reason, they went off their intended course, which would have avoided Mississippi altogether. Instead, they entered Mississippi from the east on Highway 82. Singleton, who was driving, intended to take Highway 82 to Winona, Mississippi, then turn off onto Interstate 55 North and head to Memphis.

Singleton and Highsmith approached the Interstate 55 exit near Winona at approximately 3:30 a. m. on the morning of the 14th. However, Singleton missed the exit ramp to I–55 North and got off instead on the ramp leading to I–55 South. After Singleton had driven onto the southbound ramp, Highsmith suggested that, rather than taking I–55 South and crossing over at the earliest opportunity, they back the truck onto Highway 82, head back east, make a u-turn, and catch the northbound entrance to I–55 they had just missed. Singleton agreed.

Singleton got out of the cab, and Highsmith took over the wheel. Singleton stood on Highway 82 and directed the backing operation. The rig was backed nearly all the way onto the highway when Singleton saw the headlights of a car approaching from the west. Singleton yelled to Highsmith to pull up. Highsmith started back up the exit ramp and managed to get the tractor and most of the trailer off the highway. But the approaching car never swerved or slowed down. It collided with the right rear of the trailer. The driver of the car was severely injured, and the passenger was killed.

### In This Corner . . .

At the time of the accident, Blue Bird was the named insured under a policy issued by the Insurance Company of North America (INA). Ryder was the named insured under a policy issued by the Liberty Mutual Insurance Company (Liberty). The Liberty policy also extended coverage to certain lessees of Ryder trucks. .

### The Preliminary Bouts

The passenger's administrator sued the driver, Blue Bird, Singleton, and Ryder in Mississippi state court. Blue Bird and INA tendered defense on behalf of Blue Bird and Singleton to Ryder and Liberty. Ryder and Liberty refused to assume the defense, so INA provided the defense of Blue Bird and Singleton. A voluntary nonsuit was entered dismissing the claim against Ryder. The case was then settled by payment of $35,000 and costs to the plaintiff. INA paid one-half the settlement cost, Ryder and Liberty the other half.

The driver sued Blue Bird, Singleton, and Ryder in Mississippi state court. The suit was removed to the Northern District of Mississippi. Blue Bird and INA again tendered defense to Ryder and Liberty, Ryder and Liberty again refused to assume the defense, and INA again provided the defense of Blue Bird and Singleton. Ryder moved for and was granted summary judgment dismissing the claim against it. The suit was then settled for $50,000 and costs. INA again split the settlement payment with Ryder and Liberty.

### The Main Event

Both settlement payments were made with the understanding that the parties to the present litigation—Blue Bird, INA, Ryder and Liberty—reserved the right to negotiate and, if necessary, litigate between themselves the questions of coverage. The parties, unfortunately, were unable to reach an amicable resolution of the coverage questions. Blue Bird and INA then filed this diversity suit against Ryder and Liberty seeking to recover its half of the money damages paid in settlement. They also sought recovery of attorney fees and expenses incurred in defending the suits on behalf of Blue Bird and Singleton. Ryder and Liberty counterclaimed for their half of the damages paid in settlement.

In the District Court, Liberty and Ryder decisioned INA and Blue Bird, the District

Judge ruling that Blue Bird and INA take nothing on their claims against Ryder and Liberty and awarding judgment to Ryder and Liberty on their counterclaim. This appeal followed.

The basic contentions of the parties can be easily summarized. At issue is which policy—INA's policy issued to Blue Bird or Liberty's policy issued to Ryder—covers Blue Bird's liability for the settlement payment. Blue Bird and INA argue, first, that the INA policy provides no coverage for the liability, and, alternatively, that INA's coverage is excess and Liberty's primary. Ryder and Liberty's contentions track Blue Bird and INA's—that is, they argue that Liberty's policy does not cover the liability, and, alternatively, that Liberty's coverage is excess and INA's primary.

### Weighing In

The resolution of these arguments depends upon the construction and interpretation of various clauses in the rental contract between Blue Bird and Ryder, the INA policy issued to Blue Bird, and the Liberty Mutual policy issued to Ryder. For the convenience of the reader, we set forth below the critical provisions of the rental contract and insurance policies. The provisions are numbered in brackets and will be referred to throughout using these numbers.

#### RENTAL CONTRACT

■ For the purpose of inducing the Owner to enter into this Agreement, Renter warrants that the Vehicle shall not be operated:

(a) In violation of any law, ordinance, rule or regulation of any governmental agency or body or by any person under the age of 21 or who is not duly licensed.

(b) To push or tow any other Vehicle.

(c) By any person other than the Renter, his employer or any person regularly employed by such Renter.

(d) By a driver or Renter who has given a fictitious name or false address.

(e) By any person while under the influence of intoxicants or narcotics.

(f) In excess of applicable speed limits; in a reckless or abusive manner; or in any race or speed contest.

(g) Outside the scope of the driver's employment and the usual course of business of Renter.

Operation of the Vehicle by Renter, his employee, agent or any other authorized person, in violation of the use and driver restrictions or Renter's warranties is expressly prohibited.

■ Renter agrees to notify Owner of any change of driver and to arrange for Owner to safety check any such additional driver.

■ The Vehicle is covered by an automobile liability insurance policy, a copy of which is available for inspection at the main offices of the Owner upon request by Renter; and Renter being an assured under said policy, agrees to comply with and be bound by all the terms, conditions, limitations and restrictions thereof, all of which are hereby incorporated by reference and made a part hereof as though fully set forth at length, including those terms, conditions, limitations and restrictions of which no specific mention is made hereunder. The liability insurance to be furnished by Owner pursuant to this agreement shall not exceed $100,000 for each person insured, subject to the limit of $300,000 for all injuries resulting from any one accident; and a limit of $25,000 for damages to property resulting from any one accident. The insurance extended hereunder (a) excludes coverage of Renter or the driver while the vehicle is used, operated or driven in violation of any of the provisions hereunder, and (b) excludes coverage for loss or damage to property owned by or in the possession of Renter or for any injuries of any nature whatsoever to Renter, Renter's agents, employees, guests, members of Renter's household or other occupants of the Vehicle.

#### INA POLICY

■ DEFINITION OF INSURED

The unqualified word "insured" includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply:

(a) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; or with respect to a trailer while used with any automobile owned or hired by the insured and not covered by like insurance in the company;

■ **OTHER INSURANCE**

If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.

■ **CONDITION**

With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured.

### LIBERTY POLICY

■ **PERSONS INSURED**

 * * * * * *

None of the following is an **insured**:

 * * * * * *

(iv) any person or organization, other than the **named insured**, with respect to:

(1) a motor vehicle while used with any **trailer** owned or hired by such person or organization and not covered by like insurance in the company (except a **trailer** designed for use with a **private passenger automobile** and not being used for business purposes with another type motor vehicle), or

■ **OTHER INSURANCE**

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**ENDORSEMENT [9]** (Effective 1/1/69)

■ It is agreed that such automobile liability insurance as is afforded by the policy, including the Exclusions and Conditions applicable thereto, for bodily injury liability under Coverage C and for property damage liability under Coverage D applies to any one or more persons or organizations leasing/renting an automobile from any named insured listed in the schedule below, subject to the following provisions:

 * * * * * *

■ "In addition to the other terms of this policy, the insurance afforded to such lessee/rentee, his agents or employees, or to any person or organizations legally responsible for the use of an automobile so leased/rented by such lessee/rentee shall also be subject to the terms, including any limit or limits of liability, conditions, restrictions, and limitations in the lease/rental agreement, providing the company's understanding under this policy is not thereby enlarged or extended."

■ The insurance afforded to such lessee/rentee applies only to the maintenance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/rentee or for which he is legally liable, but only while such trailer is attached to the leased/rented automobile referred to in part (1) of this sub-paragraph.

NOTE: "The insurance under part (2) of this sub-paragraph applies subject to the provisions of Condition 6, Other Insurance, of the policy."

ENDORSEMENT [13] (Issued 4/70; effective 1/1/69)

It is agreed that the wording under Section 4 NOTE on Endorsement No. 20 is eliminated and replaced by the following:

NOTE: "The insurance under part (2) of this sub-paragraph is excess over any other valid and collectible insurance the insured may have whether such coverage is on a primary, excess or contingent basis."

NOTE: "The insurance under part (2) does not apply if the insured has any other insurance whether on a primary, excess or contingent basis."

ENDORSEMENT [14] (Issued 5/70; effective 1/1/69)

It is agreed that End. 55 is amended to eliminate the following:

Note: "The insurance under part (2) does not apply if the insured has any other insurance whether on a primary, excess or contingent basis."

### Choosing A Referee

■ This suit was filed in Mississippi district court, and we must therefore apply the choice-of-law rules a Mississippi court would apply had the case been filed in state court. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Mississippi has recognized and applied the "center of gravity" approach to resolving choice of law issues in contract cases. *See Dunavant Enterprises, Inc. v. Ford,* Miss.1974, 294 So.2d 788; *Mitchell v. Craft,* Miss.1968, 211 So.2d 509; *Craig v. Columbus Compress & Warehouse Co.,* Miss.1968, 210 So.2d 645. Under this approach, "the court trying the action applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event or parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation." *Craig, supra,* at 649.

1. We find Blue Bird's joining with INA in making this argument somewhat ironic, especially in view of INA's having undertaken the defense of Blue Bird without protest. Internecine insurance lawsuits sometimes make strange bedfellows.

2. Blue Bird and INA cite several cases interpreting similar policy language as support for

■ Although the accident giving rise to the liability occurred in Mississippi, the insurance companies have paid off on the claims of the injured Mississippi residents, the driver and passenger of the private car. Mississippi therefore has no real concern with the issues involved in this litigation. On the other hand, the insurance contract between Blue Bird and INA was executed in Georgia, Liberty extended insurance coverage to Blue Bird through the rental contract executed in Georgia, and the parties primarily concerned in the leasing of the tractor—Blue Bird, the local Ryder firm, Ozment, Anderson, and Singleton—are Georgia residents. These Georgia contacts with both the events and the parties involved in this suit lead us to conclude that Mississippi would hold that Georgia law controls.

### Round I

We discuss first the arguments of both INA and Liberty that their policies excluded any coverage whatsoever for the liability. We find both arguments unconvincing.

■ Blue Bird and INA argue that because the Blue Bird trailer was being used with a Ryder tractor—an "automobile owned or hired by the insured [Blue Bird]" —and the tractor was "not covered by like insurance in the company [INA]," clause [4] of the INA policy excludes coverage for the liability.[1] This position is correct insofar as concerns coverage of any person insured under the omnibus clause in the policy—e. g., Singleton. But we are concerned here with coverage as to Blue Bird—who, by virtue of the settlement, was obligated to pay the liability—and the exclusion in [4] applies only to persons "other than the named insured." Because Blue Bird is a named insured on the INA policy, the exclusion is inapplicable.[2]

their argument, among them *Canal Ins. Co. v. State Automobile Ins. Co.,* 5 Cir., 1970, 433 F.2d 373. But these cases are clearly distinguishable. In *Canal,* for example, coverage was excluded on a liability arising out of the use of the insured trailer not by the named insured, but by an *omnibus* insured—the named insured's brother, who had borrowed

On the other hand, the like insurance clause in Liberty's policy with Ryder, [7], considered in isolation, does exclude coverage. The contested liability concerns coverage of an omnibus insured—Blue Bird—and the insured Ryder tractor was being used with a Blue Bird trailer "not covered by like insurance in the company." However, Endorsement [9] of the Liberty policy modifies the effect of the like insurance clause. This is clear from ¶ [12] of Endorsement [9], which recognizes that the lessee of a Ryder vehicle has coverage on the leased vehicle while it is being used with a trailer owned by the lessee. Thus, as Ryder and Liberty apparently concede, Blue Bird was covered by the Liberty policy unless coverage was excluded by ¶ [11] of Endorsement [9] and the terms of the rental contract.

¶ [11] of Endorsement [9] incorporates by reference the exclusions, restrictions, and limitations in the rental contract between Ryder and the insured lessee. ¶ [3] of the rental contract between Blue Bird and Ryder excludes coverage of the lessee—Blue Bird—while "the vehicle is being used, operated, or driven in violation of any of the provisions" of the contract. Ryder and Liberty contend that [3] excludes coverage because the tractor was being operated in violation of ¶¶ [1] and [2] of the contract. By [1], Blue Bird warranted that the tractor would not be operated by "any person other than the Renter, his employer, or any person regularly employed by such Renter"; by [2], Blue Bird agreed "to notify Owner of any change of driver and to arrange for Owner to safety check any such additional driver." At the time of the accident giving rise to the liability, Ryder and Liberty argue, the tractor was being operated by Highsmith, a person not "regularly employed" by Blue Bird and one whom they had not been notified would drive the vehicle.

In support of their arguments, Ryder and Liberty place primary reliance on the fact that Highsmith was under the wheel and operating the truck's physical mechanism at the time the accident occurred.[3] Their argument, though not without merit, is ultimately unpersuasive, for it ignores the important role played by Singleton in the execution of the backing operation.

Because it was night and visibility was limited, the task of backing up the tractor-trailer unit required the participation of two persons—one person to manipulate the physical controls and another to direct him. The person directing had to give all instructions for the physical operation and also had to maintain a lookout for oncoming cars. Thus, the job Singleton assumed for himself was in fact the more critical. Under these circumstances, we cannot accept that the parties intended to exclude coverage, for the essential purposes of the protections afforded Ryder by [1] and [2] were not affected. The principal purpose of [1] was to ensure that the Ryder truck would at all times be subject to the control of the lessee, that of [2] to prevent the entrusting of the vehicle to a person incapable of driving it. Here, the authorized driver remained, for all practical purposes, in control of the Ryder truck, and his capabilities—his eyesight and experience—were the most relevant in

the trailer for use in his business. Indeed, one case relied upon by Blue Bird and INA, *Pennsylvania Threshermen & Farmer's Mutual Cas. Ins. Co. v. Hartford Acc. & Indemnity Co.*, 4 Cir., 1962, 310 F.2d 618, affirmatively rebuts their argument. Interpreting a like insurance clause similar to the one involved here, the Court stated:

The policy provides, in effect, that the insurance under this policy does not apply in certain circumstances with respect to any person or organization *other than the named insured.* The exclusion clause is directed not to the named insured but to persons using the insured vehicle with the permission of the named insured.

310 F.2d at 621 [emphasis in original].

3. Ryder and Liberty also place some emphasis on the fact that Highsmith, not Singleton, was the person who suggested the backing operation. We think this circumstance of little weight, however, since it was Singleton, as the person in the driver's seat at the time, who made the actual decision to undertake the maneuver.

the execution of the maneuver.[4] Construing the contract terms in light of their purposes, then, we hold that Blue Bird was not in violation of any of those terms at the time the accident occurred, and, therefore, that coverage under the Liberty policy was not excluded.

At the end of Round I, then, despite some close calls, both Liberty and INA remain in the ring, each having failed to convince us that it should win because the other side has forfeited the match.

### Round II

Having concluded that neither the INA nor the Liberty policies exclude coverage of Blue Bird for the contested liability, we turn now to the question of the nature of their respective coverages.

Because the Blue Bird trailer is an "owned automobile" under the policy language, INA's policy provides primary coverage to Blue Bird with respect to liabilities arising out of the use of the trailer. INA's policy also provides coverage with respect to the "hired automobile," the Ryder tractor. By virtue of the Other Insurance clause, [5], and condition [6], however, INA's coverage of Blue Bird for liabilities arising out of the use of the hired Ryder tractor is "excess insurance over any other valid and collectible insurance."

The nature of the coverage provided Blue Bird by the Liberty policy presents a more involved question. The relevant policy provisions are Endorsements [9], [13], and [14].

By Endorsement [9], Liberty undertook to provide coverage to persons leasing automobiles from Ryder. This insurance covers the lessee on both the leased Ryder automobile—here, the tractor—and any trailer attached to the leased Ryder automobile and used by the lessee—here, the Blue Bird trailer. See ¶ [12] of Endorsement [9].

We consider first the nature of the coverage afforded Blue Bird on the leased Ryder tractor. The Other Insurance clause of the Liberty policy, [9], states that "the insurance afforded by this policy is primary insurance, except where stated to apply in excess of or contingent upon the absence of other insurance." None of the limitations to excess or contingent coverage in the Liberty policy apply to coverage on the leased Ryder tractor. First, the Ryder tractor is an "owned automobile" as that term is defined in the policy, so the limitations to excess with respect to hired and nonowned vehicles are inapplicable. Second, the limitation to excess coverage in Endorsements [13] and [14] applies only to vehicles covered under part (2) of ¶ [12] of Endorsement [9]—trailers attached to the leased Ryder vehicle and owned by the lessee—and not to the Ryder tractor, a vehicle covered under part (1) of ¶ [12]. Thus, the Liberty policy provided primary coverage to Blue Bird on the Ryder tractor.

The insurance provided Blue Bird on the Blue Bird trailer used with the Ryder tractor, however, is unequivocally limited to excess by Endorsements [13] and [14]. These endorsements provide that the insurance under part (2) of ¶ [12] of Endorsement [9]—coverage on trailers owned by the lessee and attached to the leased Ryder vehicle—is "excess over any other valid and collectible insurance the insured may have."

---

4. The parties have not pointed us to, nor has our independent research disclosed, any Georgia cases directly on point. But because the issue is not entirely one of law, but of what the parties to this contract intended, we do not consider it appropriate to certify the question to the Georgia Supreme Court. In support of our conclusion, however, are cases from numerous jurisdictions holding that a person not in actual physical control of an automobile was nevertheless operating it within the meaning of an insurance policy. See, e. g., Trans-Continental Mutual Ins. Co. v. Harrison, 1955, 262 Ala. 373, 78 So.2d 917; Mayflower Ins. Exchange v. Kosteriva, 84 Idaho 25, 367 P.2d 572; Neel v. Indemnity Ins. Co., 1939, 122 N.J.L. 560, 6 A.2d 722, aff'd, 124 N.J.L. 130, 11 A.2d 106. See also State Farm Ins. Co. v. Coughran, 1938, 303 U.S. 485, 491, 58 S.Ct. 670, 672, 82 L.Ed. 970 ("The term 'operate' has varying meanings according to the context. . . . One may operate singly with his own hands, or jointly with another, or through one or more agents"). Cf. Liberty Mutual Ins. Co. v. Steenberg Constr. Co., 8 Cir., 1955, 225 F.2d 294; Woodrich Constr. Co. v. Indemnity Ins. Co., 1958, 252 Minn. 86, 89 N.W.2d 412.

Blue Bird and INA, however, argue that Endorsements [13] and [14] are ineffective to modify the coverage afforded the lessee under Endorsement [9] because no consideration passed from Liberty to Ryder for the restriction in coverage. Endorsements [13] and [14], they emphasize, were issued in the middle of a policy term. In support of their argument, Blue Bird and INA rely on cases holding that where the insurer makes no rebate or rate reduction for a restrictive endorsement, the endorsement is invalid.[5] Ryder and Liberty counter with cases holding that the insurer's implied forbearance in cancelling the policy is sufficient consideration for restrictions of coverage.[6]

 Under Georgia law, implied forbearance to cancel is not sufficient consideration. In *Patterson v. Cotton States Mutual Insurance Co.*, 1968, 221 Ga. 878, 148 S.E.2d 320, 322–23, the Georgia Supreme Court held that where there was no evidence that the insurer's intent to cancel the policy or require a higher premium was communicated to the insured, a restrictive endorsement was not supported by valid and binding consideration. But we do not think that case controls this one, for it involved a situation fundamentally different from that involved here. There, the insurer had issued a restrictive endorsement that limited, without a premium adjustment, the coverage bargained for by the party to whom the policy had been originally issued. In this case, on the other hand, the restrictive endorsement had no such effect, for it merely restricted the coverage afforded to Ryder's *lessees*. The latter acquire coverage only when they sign the rental contract and pay Ryder a premium for insurance.[7] Ryder in effect acts only as a middleman in procuring insurance for the lessee, which the lessee then purchases.

Blue Bird is therefore bound by Endorsements [13] and [14] because they were contained in the Liberty policy at the time it signed the rental contract. In other words, *Patterson* is inapposite because endorsements issued in April and May of 1970 cannot very well "restrict" bargained-for coverage, such that consideration is required to validate the restriction, when that coverage was not acquired until April 12, 1971, the date the rental contract was executed.

We therefore conclude that Liberty's coverage of Blue Bird is primary on the Ryder tractor and excess on the Blue Bird trailer. At the end of Round II, then, the scorecard looks like this:

| | Tractor | Trailer |
| --- | --- | --- |
| Liberty | primary | excess |
| INA | excess | primary |

### Round III

 The question of which policy provides primary coverage for the liability thus boils down to whether the accident arose out of the use of the tractor, the trailer, or both. We start from the premise that "arising out of," as we said in *Red Ball Motor Freight v. Employers Mut. Liability Ins. Co.*, 5 Cir., 1951, 189 F.2d 374, 378, "are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with', the use of the car." Reflecting this, nearly every jurisdiction to face the question has held that an accident involving a tractor/trailer unit arises out of the use of both regardless of which part of the unit was actually involved in the accident. *See,*

---

5. *E. g., Wackerle v. Pacific Employers Ins. Co.*, 8 Cir., 1955, 219 F.2d 1; *Southern Farm Bureau Cas. Ins. Co. v. United States*, 8 Cir., 1968, 395 F.2d 176; *Rice v. Provident Life & Accident Ins. Co.*, 1937, 231 Mo.App. 560, 102 S.W.2d 147.

6. *E. g., Mazzuca v. Fund Ins. Co.*, 1974, 90 Nev. 409, 528 P.2d 705; *State Farm Mutual Ins. Co. v. Pierce*, 1968, 182 Neb. 805, 157 N.W.2d 399;

*Johnson v. Central National Ins. Co.*, 1962, 210 Tenn. 24, 356 S.W.2d 277; *Ellis v. Southern Farm Bureau Ins. Co.*, 1958, 233 Miss. 840, 103 So.2d 357.

7. If the lessee agrees to provide his own insurance, Ryder reduces the rental price on the vehicle.

*e. g., Canal Ins. Co. v. State Auto. Ins. Assoc.,* 5 Cir., 1970, 433 F.2d 373 (Louisiana law); *Insurance Co. of North America v. Royal Indemnity Co.,* 6 Cir., 1970, 429 F.2d 1014; *Smith v. Travelers Indemnity Co.,* 1973, 32 Cal.App.3d 1010, 108 Cal.Rptr. 643; *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.,* 1970, 259 Md. 354, 269 A.2d 826; *Hartford Acc. & Indemnity Co. v. Liberty Mutual Ins. Co.,* Fla.1973, 277 So.2d 775.[8] As we stated in *Canal Insurance Co., supra,* at 375, "the tractor and trailer were operated together as a unit, both being under the control, or lack of it, of the driver." *See* Risjord & Austin, 7 Automobile Liability Insurance Cases 9540, where the authors approve the result reached in *Smith, supra,* and state, "Where a truck and towed trailer are involved in an accident, the courts are well-advised to avoid the metaphysics and hold that the accident arose out of the use of each."

Thus, INA's and Liberty's policies apply to the loss on an equal basis. The Other Insurance clauses in both policies therefore apply. *See* [5], [8]. Under these clauses, each insurer is liable for that proportion of the loss that its limit of liability bears to the total applicable limit of liability of all collectible insurance. The limit of liability on both policies is $100,000/300,000, so Liberty and INA are each liable for half the loss.

Unfortunately, this conclusion does not end the case entirely. There is apparently some question of whether the Liberty policy obligated Liberty to provide Blue Bird's defense in the personal injury lawsuits. *See* ¶ 2 of Endorsement 3. Moreover, the Liberty policy has a deductible that appears to be applicable. *Cf. Ryder Truck Rental, Inc. v. Insurance Co. of North America,* 1977, 142 Ga.App. 408, 236 S.E.2d 146. Some adjustment of the expenses incurred in litigating and settling the personal injury lawsuits may therefore be required. Because the parties have not addressed these issues in their briefs, and because the possibilities for error on our part in interpreting these gargantuan insurance policies are therefore fairly high,[9] we remand to the District Court to sort out these clean-up matters.

At the end of an anticlimatic Round III, then, we declare this match a draw. The parties must repair to lick their wounds, but we are confident they shall rebound to fight new battles. With the help of the United States Congress, however, perhaps this are-

---

8. The Georgia courts have apparently not passed on the question. But because we do not consider the issue a close one, we find certification inappropriate. *See State of Florida ex rel. Shevin v. Exxon Corp.,* 5 Cir., 1976, 526 F.2d 266, 275.

9. The policies involved in this case are reminiscent of that described by Judge Schnackenberg in *Ocean Acc. & Guar. Corp. v. Aconomy,* 7 Cir., 1955, 224 F.2d 242, 247:

"The true meaning of the policy is difficult to determine. An examination of it involves a physical effort of no mean proportions. Starting out with three printed pages, the first of which consists largely of a form which is filled in on a typewriter, the reader is confronted also with six physically attached supplements, or riders, inconveniently assorted into different sizes. If he is possessed of reasonable physical dexterity, coupled with average mental capacity, he may then attempt to integrate and harmonize the dubious meanings to be found in this not inconsiderable package. A confused attempt to set forth an insuring agreement is later assailed by such a bewildering array of exclusions, definitions and conditions, that the result is confounding almost to the point of unintelligibleness."

The Liberty Mutual policy issued to Ryder consists of five double-columned, single-spaced pages, to which some 115 endorsements are attached. We join with Judge Learned Hand in lamenting the "shiftless composition" of these policies, and concur in his insistence that the parties point out the relevant provisions before we attempt to interpret them. *See Schmutz v. Employees' Fire Ins. Co.,* 2 Cir., 1935, 76 F.2d 119, 122:

"The amorphous result which so often confuses parties and courts and breeds litigation will no doubt persist, and we must struggle as we can to impose coherence upon conglomerate jargon irresponsibly put together at random. But we may and should insist upon the most unsparing use of the canon contra proferentem; that is, upon the underwriter's disclosing a plain path out of the jungle he has made."

na shall not again be troubled by this kind of controversy.[10]

REVERSED and REMANDED.

10. *See* H.R. 9622, S. 2389, S. 2094, 95th Cong., 2d Sess. (1978) (bills to abolish diversity jurisdiction).