## 19712. WOLVERINE INSURANCE COMPANY *v.* JACK JORDAN, INC.

SUBMITTED MAY 14, 1957—DECIDED JUNE 10, 1957.

*Hardin & McCamy,* for plaintiff in error.

*Pittman, Kinney & Pope, H. E. Kinney,* contra.

MOBLEY, Justice. Jack Jordan, Inc., sued Wolverine Insurance Company seeking to recover the amount of a judgment rendered against the plaintiff, plus penalty and attorney's fees for the failure of the company to defend the suit and pay the judgment. The insurance company's general demurrer was overruled by the trial court and the exception is to that judgment.

The judgment obtained against the plaintiff arose out of an incident which occurred when one of the plaintiff's trucks, in hauling some machinery belonging to one of the plaintiff's customers, tried to pass under an overhead bridge on Northside Drive in Atlanta. The machinery being hauled came in contact with the bridge and was damaged. The plaintiff's truck did not strike the bridge or come in contact therewith in any manner; and damage was restricted to the machinery being hauled and was caused by the machinery striking the bridge. The company denied liability and refused to defend the resulting suit against its insured and refused to pay the judgment rendered against the insured.

The insurance policy sued on provides two general types of coverage. Under the scheduled property floater policy, coverage is afforded for damage to the insured's equipment listed therein, consisting of trucks and semi-trailers. By an endorsement to the policy, entitled motor truck cargo insurance, coverage is provided against the insured's liability as carrier, bailee or warehouseman for loss or damage from insured perils to property consisting of "brick, latex, clay, fertilizer, sand and gravel." In count 2 of the petition, it is alleged that the plaintiff and the company intended that an endorsement to the policy be issued to include as property insured under the cargo insurance coverage the "Resaw," which was the property being hauled and which was damaged in the instant case.

Under our view of the case, it is necessary to decide only whether the damage to the property being transported resulted from a peril insured against under the policy. The applicable insuring agreement is as follows: "This policy covers the liability of the assured as carrier, bailee or warehouseman . . . for direct loss or damage, from perils hereinafter specified, . . . on shipment of lawful goods or merchandise (hereinafter called

property) . . . while loaded for shipment and in transit in or on vehicles described herein owned and operated by the assured . . . This policy insures: The assured's liability for loss or damage to property insured hereunder directly caused by: . . . (b) collision, i. e., accidental collision of the vehicle with any other vehicle or object . . ." The insured contends that the loss resulted from a collision which is covered under the policy. The company contends that the loss is not covered thereunder.

The loss occurred when the property being transported struck an underpass and was damaged. The vehicle transporting the property did not come in contact with the underpass or any other object, and was not damaged in any way. The question presented is one upon which other jurisdictions have reached opposite conclusions respecting liability of the company under practically identical facts.

In Hamilton Trucking Service, Inc. v. Automobile Ins. Co. of Hartford, 39 Wash. 2d 688 (237 Pac. 2d 781), the peril insured against was "accidental collision of the motor truck or trailer with any other automobile, vehicle or object," and the Supreme Court of Washington held that the policy did not cover damage to a gang saw which extended above the height of the truck and struck an underpass as the truck drove underneath it. In Mendelsohn v. Automobile Ins. Co. of Hartford, 290 Mass. 228 (195 N. E. 104), the policy insured against "collision, i. e., accidental collision of the motor truck with any other automobile, vehicle or object," and damage to a load of merchandise, which extended above the height of the truck on which it was being transported and struck an overhead bridge, was held not to be covered by collision coverage under the policy. In Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188 (278 N. W. 374), a "transportation floater" policy insuring against loss caused by "accidental collision of the vehicle with any other vehicle or object," was held not to cover damage to a load of automobiles caused by the loaded cars striking an overpass. Some cases reaching the opposite result as to liability of the carrier are: Gould Morris Electric Co. v. Atlantic Fire Ins. Co., 229 N. C. 518 (50 S. E. 2d 295), where the policy insured against "collision

of the conveyance on which the goods are carried," and a load of merchandise struck an overhead bridge; C. & J. Commercial Driveway, Inc. v. Fidelity & Guaranty Fire Corp., 258 Mich. 624 (242 N. W. 789), the policy provision and the circumstances of the loss being practically identical with those given above. In Garford Trucking, Inc. v. Alliance Ins. Co. of Philadelphia, 98 Fed. Supp. 781, affirmed in 195 Fed. 2d 381, the insured peril was "collision of vehicle, overturning or other accident to the conveyance," and it was held that the wording "other accident to the conveyance" encompassed an occurrence like that in the instant case.

In those jurisdictions where words practically the same as in the instant policy were used to describe the peril of collision, the courts which have held the company liable have done so on the ground that the policy provisions were ambiguous and thus subject to a strict construction against the company. It is well settled that the courts of Georgia, if there is any ambiguity in an insurance policy, will construe the contract most favorably to the insured. *Benevolent Burial Assn.* v. *Harrison,* 181 *Ga.* 230, 239 (181 S. E. 829); *Christensen* v. *New England Mutual Life Ins. Co.* 197 *Ga.* 807, 813 (30 S. E. 2d 471, 153 A.L.R. 794); *Mass. Benefit Life Assn.* v. *Robinson,* 104 *Ga.* 256 (2) (30 S. E. 918, 42 L.R.A. 261). But it is equally well settled that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given their usual significance, and this rule applies equally as well to insurance contracts as to any other contract. *Golden* v. *National Life & Acc. Ins. Co.,* 189 *Ga.* 79, 87 (5 S. E. 2d 198, 125 A.L.R. 838); *Yancey* v. *Aetna Life Ins. Co.,* 108 *Ga.* 349, 351 (33 S. E. 979); *Wheeler* v. *Fidelity & Casualty Co.,* 129 *Ga.* 237, 240 (58 S. E. 709); *Cato* v. *Aetna Life Ins. Co.,* 164 *Ga.* 392, 398 (138 S. E. 787); *Daniel* v. *Jefferson Standard Life Ins. Co.,* 52 *Ga. App.* 620 (2) (184 S. E. 366). The policy sued on insures the plaintiff against liability for "direct loss or damage" to property "while loaded for shipment and in transit in or on" the vehicles described in the policy which

loss or damage to said property is "directly caused by . . . collision, i. e., collision of the vehicle with any other vehicle or object." The plain words of the policy insure against losses to the insured property which result directly to the property from a collision of the vehicle on which the property is being transported. This is the plain, unambiguous, literal meaning of the policy. The policy does not expressly cover damage to property caused simply "by collision" or "by collision of the vehicle or property"; but this particular type of coverage is restricted to loss or damage to the property caused by collision of the vehicle described in the policy. The petition does not allege that the policy does not afford the coverage which the parties intended that it should afford at its inception. The terms of the entire policy do not justify a broadening of the collision coverage by interpretation. The policy insures against several perils, such as fire, overturning of the vehicle, collapse of bridges or docks, rising waters, perils of the seas, lakes, etc., cyclone, tornado, and windstorm. But coverage against these additional perils does not indicate to this court that an ambiguity exists as to the coverage afforded against the peril of collision. The policy does not purport to be an "all risk" policy, which might justify the view taken by other courts that an enumeration of the perils was merely descriptive of the type of losses covered by such a policy. By its terms the instant policy insures only against specified perils, and the language employed to describe the peril of collision insured against is plain and unambiguous. The insured's loss in the instant case was not caused by an accidental collision of the vehicle, and it was error to overrule the defendant's general demurrer.

Under the above decision, it is unnecessary to decide whether the plaintiff is entitled to have the "cargo insurance" policy reformed so as to include therein the specific property damaged in this case. Whether or not this were done, the loss would not be covered by the policy.

*Judgment reversed. All the Justices concur.*