## 46850. WELCH v. GULF INSURANCE COMPANY.

BELL, Chief Judge. This is a suit on a homeowner's insurance policy. In an independent action plaintiff recovered

a judgment against Lula Life, an insured under the policy. This action followed in which Lula Life was made an involuntary plaintiff. The trial court granted defendant's motion for summary judgment.

Mrs. Life was the operator of a beauty parlor located in her home, the insured dwelling. Plaintiff was a customer of Mrs. Life. Evidence adduced at the trial between plaintiff and Mrs. Life was submitted by defendant to support its motion for summary judgment. There is no dispute as to the facts. The administering of a hot oil shampoo to plaintiff by Mrs. Life gives rise to this case. The hot oil shampoo included applying heated oil to the scalp of the recipient by a cotton swab. The plaintiff was seated in a chair. Mrs. Life heated some oil on a small burner immediately adjacent to the chair. After removing the container from the burner, Mrs. Life placed it right next to the burner. She thought she had turned the burner to the off position. During this operation one of the cotton swabs in the fingers of Mrs. Life became ignited and being in close proximity to the plaintiff's head ignited plaintiff's hair.

The policy contained the following exclusionary provisions: "c. To bodily injury or property damage arising out of the rendering or of failing to render professional services; d. To bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits . . ." This exclusion was superseded by a special endorsement entitled "Office professional, private school or studio occupancy described residence premises only." In the endorsement it lists the described occupancy as beauty parlor. The endorsement reads: "c. To bodily injury or property damage arising out of the rendering of or failure to render professional services of any nature including but not limited to any architectural, engineering or industrial design services, any medical, surgical, dental or other services or treatment conducive to the health of persons or animals and any cosmetic or ton-

sorial services or treatment; d. To bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits or to the occupancy described above."

The exclusionary provision in paragraph c. as amended would preclude recovery of plaintiff as no other conclusion from the undisputed facts can be reached other than that this personal injury arose out of the rendering of tonsorial services. However, the inquiry cannot stop there as all the terms of the policy must be considered. While it is true that paragraph c. excludes liability for bodily injury arising out of the very service which gives rise to this controversy, nonetheless meaning must also be given to paragraph d. of the endorsement which immediately follows. Paragraph d. excepts bodily injury arising out of activities which are ordinarily incident "to the occupancy described above." The occupancy described in the policy is "a beauty parlor." Thus we have a situation where one provision of the policy excludes liability and another accepts liability. Every written provision of an insurance contract must be given its apparent meaning and effect. *New York Life Ins. Co. v. Whitfield,* 113 Ga. App. 266, 268 (147 SE2d 829). Paragraph c. and paragraph d. of the exclusions are repugnant to one another. When that occurs in an insurance contract the provision most favorable to the insured will be applied. *Davis v. United American Life Ins. Co.,* 215 Ga. 521, 527 (111 SE2d 488). Under the undisputed facts of this case, plaintiff's injury was attributed to the occupancy described in the endorsement. Therefore, there is coverage under the policy. The trial court erred in granting summary judgment to the insurance company.

*Judgment reversed. Evans, J., concurs. Eberhardt and Evans, JJ., concur specially.*

SUBMITTED JANUARY 4, 1972—DECIDED APRIL 4, 1972—
REHEARING DENIED APRIL 20, 1972—

*Adams, O'Neal & Hemingway, Robert S. Slocumb,* for appellant.

*Harris, Russell & Watkins, Philip R. Taylor,* for appellee.

EBERHARDT, Judge, concurring specially. I do not agree that the intention of the parties in making this contract, or in adopting the exclusions by the rider or special endorsement, envisioned the result reached in the majority opinion. As I read them, it is clear to me that it was intended to exclude the very thing which is the subject matter of this action. In my view, it is a strained construction that we are not authorized to make. But I cannot say that the construction is not possible.

EVANS, Judge, concurring specially. I find the policy very difficult to understand. I do not believe any lay person, without professional training as to insurance policies, could possibly understand whether coverage is afforded as to the loss herein sued upon or not. The policy is replete with such terms as "Change Endorsement," "Coverage C of Section 1," "Policy Amendments," "Exclusion A Under Section 2 Amended," "Supplementary Coverages," "Deductible," "Additional Exclusions," "Additional Conditions," "Section 2 Coverages," "Exclusions," "Supplementary Coverages," "Additional Definitions," "General Conditions," "Modification of Terms," "Conditions Applicable Only to Section 1", "Conditions Applicable Only to Section 2." The foregoing are subheads, and we have not yet reached the twelve pages of fine print, which the policyholder is expected to read and understand. The fine print gives rise to grounds for argument pro and con as to what is involved in certain exclusionary clauses and what is involved in certain inclusionary clauses.

When this case reached me, two very able judges of this court had already reached opposite opinions as to what the intention of the policy was as to inclusions and exclusions, as applied to the subject matter of this lawsuit. But, because of the confusing and ambiguous manner in which the policy is written, I am unable to reach a definite opinion as to what the intention of the policy was.

I believe contracts of insurance should be written in plain, everyday, understandable language, so the average person who purchases such policies may understand them, instead of being enshrouded in a maze of mysterious provisions, capable of interpretation only by insurance experts, lawyers, and judges; and then with sharp differences arising in many instances.

In *Sovereign Camp Woodmen of the World v. Heflin,* 188 Ga. 234, 235 (3 SE2d 559), the Supreme Court of Georgia held: "Policies of insurance, being prepared and written by the insurer, are to be construed strictly in favor of the insured and against the insurer." In *Wolverine Ins. Co. v. Jack Jordan,* 213 Ga. 299, 302 (99 SE2d 95), the Supreme Court of Georgia held: "It is well settled that the courts of Georgia, if there is any ambiguity in an insurance policy, will construe the contract most favorably to the insured."

Is the contract of insurance in the case sub judice ambiguous? I need go no further on this question than to point to the two conflicting opinions of Chief Judge Bell and Judge Eberhardt in this case, as to what the intention of the policy was as to coverage.

I concur in the majority opinion which holds that insurance coverage is afforded in this case.