64459. BARGE & COMPANY, INC. v. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN.

McMURRAY, Presiding Judge.

Barge & Company, Inc. was the general contractor in the construction of a housing project for the elderly located in Atlanta, Georgia. It also was one of the partners in the ownership of this project. There was a subcontractor involved in the installation of the electrical and plumbing work. At all times during construction of this project Barge & Company, Inc. had in existence several comprehensive general liability insurance policies with the Employers Mutual Liability Insurance Company of Wisconsin, otherwise known as Employers Insurance of Wausau. In 1977 the project was completed and transferred to the Housing Authority of the City

of Atlanta.

On or about August 12, 1975, the housing authority had entered into a contract with an architect with reference to inspection services during construction and prior to the transfer of the project. The architect in turn employed an engineer to assume responsibility for certain engineering services with respect to the transfer.

The housing authority now contends that it has discovered certain defective conditions in the horizontal plumbing drain lines with reference to the plumbing installation work at the project, and it brought an action in two counts against the architect contending that it had relied upon the contract with the architect with reference to the purchase of same in which it accepted the project. The housing authority further contends that after discovery of the drainage problems it requested that the defendant architect undertake to immediately correct said improper and defective plumbing installation, and the defendant having failed and refused to do so, it sought to recover damages against the defendant for same. In Count 2 it alleged that defendant was negligent in failing to properly inspect the plumbing installation work and said failure was a direct contributing cause to all damages suffered by the housing authority. Plaintiff sought general and punitive damages against the defendant as resulting therefrom.

Thereafter, the defendant architect brought a third party complaint against Barge & Company, Inc. (Barge), as general contractor, and against Barge's subcontractor that installed the plumbing, and the engineer the defendant architect had employed to assist it in inspection and accepting the project for the housing authority. Whereupon, Barge tendered the suit papers to its insurer, Employers Mutual Liability Insurance Company of Wisconsin, and it entered a defense on behalf of Barge but reserved its right to contest the issue of coverage, that is, subject to said reservation of rights which was duly transmitted to Barge by certified mail.

The insurer has now filed a declaratory judgment action against all parties concerned, shown above, seeking a declaration of its rights under its policies of insurance setting forth, in general, the substance of the above and further that the housing authority had identified the nature of its damages in certain interrogatories in its lawsuit against the parties with reference to the defects in the plumbing which had caused a substantial drainage problem involving "the horizontal drain which is shared by the sink and bathtub in each apartment unit," with reference to the fall per lineal foot, there being an absence of the required fall and in some instances "no fall" and in other units "a reverse or negative fall." It contended that the housing authority had endured "a continuous maintenance problem throughout the

building" and having no success in its attempts to get the architect or the subcontractor that had installed the plumbing to correct the continuing problem, it had obtained a bid to have the plumbing arrangement corrected, the lump sum bid being in a definite amount. The insurer further contended that after investigation of the claim it had no obligation to defend Barge under its insurance policy (not within the scope of coverage), that it was not liable for any sums which may be recovered in any civil action by way of suit, settlement or otherwise and being unable to know or judge its ultimate liability and being unable to properly defend, evaluate or negotiate a settlement of the action filed against its insured, it requested and prayed the court declare and construe the provisions of the policy of insurance and determine the respective rights of the insurer and defendant Barge.

Defendant Barge answered the complaint admitting jurisdiction, that it was a third party defendant in a complaint brought by the housing authority's architect against it as general contractor on the project of which the defendant subcontractor had performed the plumbing work and the defendant engineer had inspected the facilities for the architect; that it had tendered the suit papers to the plaintiff insurer and demanded a defense, and the insurer had entered a defense on its behalf but based upon a reservation of rights, and that there is an actual controversy existing between it and the insurer. By counterclaim Barge set forth that there were a number of policies outstanding with the plaintiff insurer and each of these policies provided that the insurer had a duty to defend any suit against Barge seeking damages for property damage "even if any of the allegations of the suit are groundless, false or fraudulent," and it was entitled to reasonable attorney fees and punitive damages in that the plaintiff insurer was contending it had no obligation to defend this defendant. It likewise filed a cross-claim against the architect based upon its claimed responsibility and liability to the defendant architect with reference to the third party complaint and that there was an actual controversy existing between Barge and the defendant architect which was a proper case to be presented for declaratory judgment. Barge prayed that the court declare that it was under no obligation to respond in damages to the architect in the event the housing authority was successful in recovering a judgment against the architect. In response the plaintiff insurer in the declaratory judgment action answered denying the counterclaim.

After discovery the trial court granted the defendant architect's motion to dismiss defendant Barge's cross-claim against it in that the instant action concerned only the policy coverage by and between

Barge and the insurer; and that the cross-claim should be abated. The plaintiff insurer then moved for summary judgment based upon the pleadings and the admissions of fact and genuineness of documents (a policy of insurance, comprehensive general liability). By amendment Barge set forth there were other comprehensive general liability policies in force during periods of time in which there was coverage afforded by plaintiff insurer and by affidavit of Barge's president, attached these policies requiring plaintiff to defend "for any type claim for damages." The motion came on for a hearing, and the court granted plaintiff insurer's motion for summary judgment declaring that the insurer had "no insurance coverage and no duty to defend the defendant [Barge] in the action" by the housing authority against its architect in which Barge was a third party defendant, as well as against the subcontractor and the engineer employed by the architect. The defendant Barge appeals. *Held:*

1. At the very outset we must examine the litigation which resulted in the declaratory judgment action. The housing authority brought an action against its architect employed by it as "Inspecting Architect" to inspect the high rise project during its construction which the authority was purchasing. This action was in two counts, one based on contract, and the other for negligence in that the architect improperly inspected certain plumbing installation work thereby causing the damages it suffered. In response thereto the defendant architect filed a third party complaint against Barge, Barge's subcontractor, and the defendant architect's engineer it had employed to assist it in inspecting and accepting the project for the housing authority. We are concerned here only with the litigation involving Barge. This third party action against Barge was in two counts seeking indemnification and/or contribution with respect to all damages awarded against the defendant architect (third party plaintiff) contending same could only result from the negligence of Barge (and the others), and the architect would be entitled to full indemnity in the event damages were awarded against it. In another count it contends that the general conditions applicable to the work performed by Barge as set forth in its contract in connection with the project required Barge to assume the obligation "to save the Owner and Architect harmless and to indemnify the Owner and Architect from every expense, liability or payment arising out of and through injury . . . or damage to property of any person or persons . . . who may be the owner of the property in any place in which the work is located, arising out of or suffered through any act or omission of the Contractor or any subcontractor or anyone either (1) directly or indirectly employed by or (2) under the supervision of any of them in the prosecution of the work included in this contract." It contended

that the term "architect" covered the housing authority's inspecting architect which was this defendant and that it was entitled to full indemnity with respect to all amounts which may be adjudged against this defendant in favor of the plaintiff (the housing authority).

Thereafter, Barge called upon its insurer to defend it in this litigation, and this resulted in the filing of the declaratory judgment action. With respect to the final judgment granting a motion for summary judgment in favor of the insurer that it had no insurance coverage and no duty to defend Barge we have for examination no less than five separate insurance policies issued by the insurer which have been produced on motion for summary judgment and considered by the court in reaching its decision. We proceed to examine in detail each of these policies for a determination of whether or not the trial court erred in granting the motion for summary judgment.

(a) All of the policies end with the numbers "040863," consequently as we examine these policies we will consider only the numbers which distinguish them from each other. The first policy we consider is "1426 26," (this policy covered a period from "8-1-75 to 5-1-76" and "5-1-76 to 5-1-77") which the insurer contends that Barge insists requires it to defend the suit. This particular policy names the Piedmont High Rise Corporation (the original owner) as the named insured, is a voluminous policy designated as a combination casualty policy and as an owners' and contractors' protective liability insurance policy. Therein the company agreed to pay on behalf of the insured all sums which insured shall become legally obligated to pay as damages because of property damage "to which this policy applies, caused by an occurrence and arising out of (1) operations performed for the named insured by the contractor designated in the declarations at the location designated therein or (2) acts or omissions of the named insured in connection with his general supervision of such operations, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . ." Under exclusions this policy does not apply "to a warranty that work performed by the designated contractor will be done in a workmanlike manner" or to property damage occurring after "all work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the named insured at the site of the covered operations has been completed or . . . that portion of the designated contractor's work out of which the injury or damages arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in

performing operations for a principal as a part of the same project; ... or property damage arising out of any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by the designated contractor ... [and property damage to] property owned or occupied by ... the insured, ... used by the insured, ... in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control, or ... work performed for the insured by the designated contractor," among other exclusions. While the exclusions are voluminous and verbose there appears to be no ambiguity as to the intention of this policy not to insure property damage to the project which is owned or occupied by the insured Piedmont High Rise Corporation used by it and in its care, custody or control or to the work performed for the insured by the designated contractor. See *Great Am. Ins. Co. v. McKemie,* 244 Ga. 84, 85 (259 SE2d 39); *Morgan v. New York Cas. Co.,* 54 Ga. App. 620 (188 SE 581). While this policy is somewhat ambiguous as to whether the contractor is covered as an insured along with the owner, the language of the exclusions is sufficient to establish that the policy did not insure the property owned or occupied by the insured or for work performed for the insured by the designated contractor. This clearly excluded the work performed by the contractor which is the subject matter of the litigation here in that the plumbing was incorrectly and improperly constructed in the high rise project.

(b) The next policies we examine all insure Barge in its construction activities for a number of years during the period of time involved in this litigation, and are comprehensive general liability policies. The insurer agrees to pay on behalf of the insured all sums which insured shall become legally obligated to pay as damages because of property damage "to which this insurance applies, caused by an occurrence, and the company shall have the right and *duty to defend any suit against the insured seeking damages on account of ... property damage,* even if any of the allegations of the suit are groundless, false or fraudulent ..." (Emphasis supplied.) Again, we refer to the exclusions. The insurance does not apply "to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner ... [or] to property damage to ... property owned or occupied by or rented to the insured, ... used by the insured, or ... in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control ..." among other exclusions. Our examination of these exclusions shows clearly that the policy does not warrant the fitness or quality of the named insured's products or warrant the work performed by or on

behalf of the named insured (the general contractor) "will be done in a workmanlike manner." *Morgan v. New York Cas. Co.,* 54 Ga. App. 620, supra.

Endorsements modifying these policies, attached thereto, agree to furnish insurance for contractual liability "assumed by the named insured under an insured contract, subject to the limits of liability and other provisions of the policy except as modified by this endorsement." Therein other exclusions appear. The insurance afforded by the endorsement does not apply "if the indemnitee of the insured is an architect . . . to liability of the indemnitee . . . arising out of the preparation . . . of . . . opinions . . . [or] to property damage to any property . . . used by the indemnitee if such property damage is caused by the sole negligence of the indemnitee . . . [or] to any obligation of the insured to indemnify." There is an allegation that Barge agreed in its general contract to indemnify the owner and the architect, hence this exclusion would apply to Barge if the contract had been produced in evidence. However, we do not find Barge's general contract for the construction of the high rise project in the record, nor do we find proof that this contract covers the inspecting architect under the term architect, all of which is alleged in the pleadings of the insurer to be the case.

But other exclusions are sufficient to show non-coverage as to warranty or fitness or quality of the named insured's work performed by or on behalf of the owner as not insuring it "be done in a workmanlike manner."

It is clear from the above and foregoing policies of insurance no matter which policy was controlling or in effect with reference to the issue here that the policies excluded property damage to the property in the care, custody or control of the insured, occupied by it or used by it and did not apply to a warranty of fitness or quality of the named insured's product or a warranty that work performed by or on behalf of the named insured would be done in a workmanlike manner.

Our next consideration then is whether or not the language in the policy required the insurer to defend any suit against the insured "even if any of the allegations of the suit are groundless, false or fraudulent." The language of the policies states clearly that the property damage for which the company agrees to pay on behalf of the insured is that "to which this insurance applies" and the exclusions clearly relieve the insurer with reference to property damage to the property in question, that is, occupied by the insured, used by the insured and in the care, custody or control of the insured if there was no "warranty that work performed by or on behalf of the named insured would be done in a workmanlike manner." The

damages simply were not covered by the policies. See *Great Am. Ins. Co. v. McKemie,* 244 Ga. 84, 85, supra; *Morgan v. New York Cas. Co.,* 54 Ga. App. 620, supra.

In the case sub judice the housing authority sued the architect for failure to discover the defects in the plumbing which did involve the workmanship of the general contractor, the defendant Barge, by and through its subcontractor. There is also a side issue as to Barge's agreement to indemnify the architect and owner, but the evidence before us is insufficient for us to determine whether it has been established as a matter of law that the inspecting architect was covered as well as the owner as alleged.

The trial court did not err in granting the insurer's motion for summary judgment so as not to require it to defend Barge with reference to the third party complaint as to indemnity and contribution with reference to the workmanlike manner of Barge's construction activities as general contractor with reference to the high rise project. While there is no doubt there is considerable ambiguity in the policies in question, nevertheless as to the exclusions we find no ambiguity with reference to same. We do not reach the issue as to whether or not the defective work was or was not an "occurrence" which is the subject matter of the third enumeration of error as shown above. The trial court did not err in granting summary judgment to the insurer based upon the policies in question. See in this connection *Cherokee Credit Life Ins. Co. v. Baker,* 119 Ga. App. 579 (1) (2), 582-585 (168 SE2d 171); *State Farm Mut. Auto. Ins. Co. v. Sewell,* 223 Ga. 31, 32 (153 SE2d 432), revg. s.c. 114 Ga. App. 331 (151 SE2d 231); *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 302 (99 SE2d 95); *Pisano v. Security Mgt. Co.,* 148 Ga. App. 567, 568 (251 SE2d 798).

*Judgment affirmed. Banke and Birdsong, JJ., concur.*

DECIDED SEPTEMBER 17, 1982.

*Moreton Rolleston, Jr.,* for appellant.

*Gary Hill, Glenn Frick, Lenwood A. Jackson, James C. Huckaby, H. Andrew Owen, John W. Greenfield,* for appellee.