A89A0461. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. BROWN.
(385 SE2d 87)

McMURRAY, Presiding Judge.

Charlie Max Brown (plaintiff) brought an action against Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm Bureau"), seeking to recover for the loss of a house that was allegedly destroyed by fire and allegedly covered under a "farmowners policy" of insurance, issued to plaintiff by Georgia Farm Bureau. Georgia Farm Bureau answered and admitted that it insured a dwelling house located "at Route #3, Eastman, [Dodge County,] Georgia" and that this house was damaged by fire on March 28, 1986, but denied that the property was totally destroyed by fire and denied that plaintiff owned the house at the time of the fire. The case was tried before a jury and the evidence revealed the following:

Plaintiff resided in an "old house" that was owned by his grandparents and was situated on a 30-acre parcel of land in Dodge County, Georgia. After plaintiff's grandparents died, he inherited the 30-acre

tract of land and, in December 1985, plaintiff moved with his wife and stepdaughter to a house which was formerly occupied by his grandparents and is located next to the "old house."

On February 3, 1986, plaintiff renewed a Georgia Farm Bureau "farmowners policy" of insurance which had covered the "old house" since before plaintiff's grandparents' deaths. The policy was made effective from February 3, 1986, through February 3, 1987. On February 19, 1986, plaintiff executed a warranty deed in favor of his half-brother, Joseph M. Hobbs, conveying 29 acres of the land plaintiff inherited from his grandparents. (This purported transfer included the "old house" which plaintiff formerly occupied.) The deed was filed for record in the Superior Court of Dodge County on the same day it was executed. On March 7, 1986, Hobbs executed a deed, reconveying the land to plaintiff. On March 28, 1986, the "old house" was destroyed by fire. Plaintiff filed a claim with Georgia Farm Bureau for the loss and, after an investigation, Georgia Farm Bureau denied coverage under its policy.

At the close of the evidence, the parties filed opposing motions for directed verdict. These motions were denied and the jury later returned a verdict in plaintiff's favor for the policy limits, $24,000. Georgia Farm Bureau's motion for judgment notwithstanding the verdict was denied; this appeal followed and, in four enumerations of error, Georgia Farm Bureau contends the trial court erred in denying its motion for judgment notwithstanding the verdict.

"The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. OCGA § 9-11-50 (Code Ann. § 81A-150). In reviewing grant of a directed verdict or a judgment notwithstanding the verdict, we must decide whether all the evidence demanded it, or whether there was some evidence supporting the verdict of the jury. *Bryant v. Colvin*, 160 Ga. App. 442 (287 SE2d 238) (1981). A judgment notwithstanding the verdict is improperly granted in the face of conflicting evidence, and an appellate court must view the evidence in the light most favorable to the party who secured the jury verdict." *Pendley v. Pendley*, 251 Ga. 30 (1), 31 (302 SE2d 554). It is from this perspective that we view the evidence upon consideration of Georgia Farm Bureau's enumerations of error. *Held*:

1. In its enumerations of error, Georgia Farm Bureau contends the "trial court erred in denying Georgia Farm Bureau's motion for judgment notwithstanding the verdict because the insurance contract provided no coverage as a matter of law, and because plaintiff failed to prove damages or an insurable interest necessary for recovery in this case. More specifically, the contract was *null and void* due to a

change in interest, title or possession in the premises. Further, the contract was *suspended* at the time of the fire because plaintiff left the premises unoccupied for over sixty consecutive days before the incident. In addition, plaintiff failed to carry his burden to prove damages or that he had an insurable interest, absolute prerequisites to recovery under the law."

The evidence authorized a finding that plaintiff conveyed the insured property to Hobbs in an attempt to protect the property from his creditors. Further, plaintiff testified that he consulted with an attorney to perfect this transaction; that the attorney was to prepare two warranty deeds, one conveying the insured property from plaintiff to Hobbs and another conveying the insured property from Hobbs to plaintiff and that these instruments were to be executed in a simultaneous transaction. Plaintiff also testified that when he executed the deed conveying the insured property to Hobbs the deed of reconveyance was not available and that it was not executed by Hobbs until March 1986. Plaintiff went on to explain that he never intended to transfer ownership of the property to Hobbs and, plaintiff's other testimony indicated that he never relinquished possession or control of the property to Hobbs. In fact, Hobbs testified that plaintiff owned the insured property on the date of the fire and that he never considered himself to be the owner of the property.

"A provision in a policy of fire insurance which declared that 'This entire policy . . . shall be void . . . if any change . . . takes place in the interest, title, or possession of the subject of insurance . . ., was not violated, so as to void the policy, by the execution of a deed by the insured purporting to convey the property to another, where the grantee, as a part of the same transaction, reconveyed the property to the insured; it appearing from uncontradicted evidence that neither party intended to enter a contract of sale and purchase, the possession remaining with the insured, and the whole transaction being merely a sham and device to prevent the institution of a proceeding for alimony on the part of the wife of the insured." *Home Ins. Co. of N. Y. v. Johnson*, 181 Ga. 139 (182 SE 41).

In the case sub judice, the evidence authorized a finding that plaintiff executed the warranty deed for the insured property to Hobbs contemplating Hobbs' immediate reconveyance of the property to plaintiff; that Hobbs did reconvey the property to plaintiff before the fire; that neither party intended to enter into a contract for the sale and purchase of the insured property; that plaintiff remained in control and possession of the insured property and that the whole transaction was merely a sham and a device to prevent plaintiff's creditor's from reaching the insured property. Under these circumstances, we find that plaintiff's execution of the warranty deed in favor of Hobbs was not a completed sale which triggered the change

of title or interest provision of the policy. *Home Ins. Co. of N. Y. v. Johnson*, 181 Ga. 139, 142, supra. See 4A Appleman, Ins. Law & Practice 332, 336, § 2742. Consequently, the trial court did not err in denying Georgia Farm Bureau's motion for judgment notwithstanding the verdict on this ground.

2. Next, Georgia Farm Bureau contends "[p]laintiff's claim under the [insurance] contract is barred because the premises were unoccupied for over sixty consecutive days before the fire."

The insurance contract provided, under a section entitled "Conditions suspending or restricting insurance," that, "[u]nless otherwise provided in writing added hereto[,] this Company shall not be liable for loss occurring . . . while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied for a period of sixty consecutive days . . . ." This provision was broadened in a section of the policy entitled, "Vacancy and Unoccupancy," wherein "[p]ermission [was] granted for the farm dwelling(s) covered under Coverage A to remain . . . unoccupied for not more than 120 consecutive days . . . ."

The evidence relative to these provisions of the policy authorized findings that the insured property remained "unoccupied" for more than 60 consecutive days before the fire, but not more than 120 consecutive days before the fire. " 'Thus we have a situation where one provision of the policy excludes liability and another accepts liability. Every written provision of an insurance contract must be given its apparent meaning and effect. (Cit.) (The provisions currently under consideration) are repugnant to one another. When that occurs in an insurance contract, the provision most favorable to the insured will be applied. (Cit.)' *Welch v. Gulf Ins. Co.*, 126 Ga. App. 115, 117 (190 SE2d 101) (1972). Accord *Cotton States Mut. Ins. Co. v. Crosby*, 149 Ga. App. 450 (254 SE2d 485) (1979), rev'd on other grounds, 244 Ga. 456 (260 SE2d 860) (1979)." *United States Fire Ins. v. Hilde*, 172 Ga. App. 161, 163 (2), 164 (322 SE2d 285).

In the case sub judice, the provision most favorable to plaintiff allows an insured dwelling to remain "unoccupied" for at least 120 consecutive days before coverage is suspended. Consequently, since the evidence authorized a finding that the insured property was not "unoccupied" for more than 120 consecutive days before the fire, plaintiff is not "barred" from pressing his claim. See *United States Fire Ins. Co. v. Hilde*, 172 Ga. App. 161, 163 (2), supra.

3. Georgia Farm Bureau further contends that plaintiff failed to prove that the insured house was "wholly destroyed by fire," thus justifying recovery for the policy limits under OCGA § 33-32-5 (a). This Code section provides in pertinent part as follows: "Whenever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or struc-

ture located in this state against loss by fire and the building or structure is *wholly destroyed by fire* without fraudulent or criminal fault on the part of the insured or one acting in his behalf, the amount of insurance set forth in the policy relative to the building or structure shall be taken conclusively to be the value of the property, except to the extent of any depreciation in value occurring between the date of the policy or its renewal and the loss . . . ." (Emphasis supplied.) Plaintiff's evidence showing that it would cost more to repair the house than to replace it and photographs submitted into evidence by Georgia Farm Bureau showing that the house was substantially gutted by the fire was sufficient to authorize the jury's finding that the house was "wholly destroyed by fire" as contemplated by the above statute. See *Allstate Ins. Co. v. Baugh,* 173 Ga. App. 615, 617 (3) (327 SE2d 576).

4. Lastly, Georgia Farm Bureau contends plaintiff failed to prove that he had an insurable interest in the property at the time of the fire as is required by OCGA § 33-24-4 (b). This contention is without merit.

The evidence shows that plaintiff acquired title to the insured house before it was destroyed by fire and, as was held in Division 1 of this opinion, plaintiff never transferred his interest in the property. See *Home Ins. Co. of N. Y. v. Johnson,* 181 Ga. 139, supra.

*Judgment affirmed. Carley, C. J., and Beasley J., concur.*

DECIDED JUNE 27, 1989 —
REHEARING DENIED JULY 27, 1989 —

*McKenzie & McPhail, John B. McPhail, Robert T. Ross, Pat Huddleston II,* for appellant.
*Milton Harrison,* for appellee.