[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11284
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00494-TES

MIA HOLLINGSWORTH,

Plaintiff-Appellant,

versus

LIBERTY MUTUAL INSURANCE
COMPANY,
a foreign insurance company,

Defendant,

LM INSURANCE CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 8, 2020)

Before JILL PRYOR, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Mia Hollingsworth, proceeding *pro se*, appeals the district court's order granting summary judgment in favor of LM Insurance Corporation on her breach of contract and bad faith claims arising out of LM's alleged insufficient payment for fire damage to her home.  Hollingsworth contends that the district court erred in concluding that no genuine issue of material fact existed regarding whether her home was "wholly destroyed" within the meaning of Georgia's Valued Policy Statute, O.C.G.A. § 33-32-5(a).  She further argues that even if her home was not wholly destroyed, there were genuine issues of material fact concerning whether LM breached the insurance agreement and whether LM acted in bad faith by failing to pay the full repair cost of the damage to her home.  After careful review, we affirm the district court's grant of summary judgment.

## I.    BACKGROUND

### A.    Factual Background

In September 2017, a fire damaged Hollingworth's home.  The day after the fire, Hollingsworth filed a claim with LM under an insurance policy contract. About eight days later, an LM representative photographed the damage to the home.  Due to the nature of the damage, LM reassigned the claim to a large loss adjuster.

2

About two weeks after the fire, Hollingsworth met with the large loss adjuster. He inspected the home and provided her with a repair estimate of $190,299.00 eight days later. In addition to providing the estimate, the adjuster also discussed with Hollingsworth the overall scope of the repairs as well as the estimated time for their completion. He also advised that the house was not a total loss, meaning that it would be repaired rather than completely rebuilt.

Consistent with the terms of the insurance policy, Hollingsworth sought repair estimates from three different contractors. The first contractor never provided an estimate because Hollingsworth felt that the representative was "rude and dismissive" and that he wanted to make repairs based solely on LM's estimate. Doc. 28-1 at 26.[1]

Hollingsworth then met with a second contractor, who was recommended by LM. He provided a verbal estimate of around $320,000 for the repairs. He told Hollingsworth that he would provide a formal written estimate once he had consulted with an electrical sub-contractor, but he never did, despite receiving an electrical quote and multiple follow-up attempts by Hollingsworth. This contractor says he told Hollingsworth that the home was not a complete loss. Hollingsworth disputes this; according to her, he "did not state the Property was not a total loss." Doc. 26-2 at 4.

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

3

Hollingsworth's third contractor provided a written estimate of $366,599.03 to repair the fire damage and, like the second contractor, "did not, at any point, provide . . . an opinion that the Property was a total loss." Doc. 24-2 at 4-5 Three days after Hollingsworth received the written estimate from the third contractor, she informed the second contractor that she would not need his services because she was "more comfortable with a local contractor with local trades." Doc. 26-3 at 21.

At some point after receiving the initial estimate from LM's adjuster, Hollingsworth reached out to an engineering firm because she was concerned about the scope of the proposed electrical work and repairs. After inspecting the house, the engineering firm issued a structural engineering report supporting its conclusions that repair of the home was "feasible." Doc. 24-2 at 5; *see also* Doc. 26-2 at 3. Hollingsworth submitted this report to LM and informed it that she believed that Georgia's Valued Policy statute, O.C.G.A. § 33-32-5(a), applied to her claim. She demanded payment of the policy limits consistent with the statute.

After receiving Hollingworth's demand letter and reviewing the engineering firm's report, LM revised its repair estimate from $190,299.00 to $232,698.27 and paid Hollingsworth the property's actual cash value,

$163,427.95.[2]  LM's revised estimate included, among other things, the electrical quote from the second contractor and "reflect[ed] an agreed cost of restoration" between the second contractor and LM.  Doc. 26-5 at 5.

Despite the difference between LM's estimate and the estimate of the contractor Hollingsworth chose to hire—the third contractor from whom she received an estimate—LM and the contractor "agreed to work towards reaching an agreed scope of damages" and discussed "a mutual plan to inspect certain exterior walls to investigate for any smoke damage."  Doc. 24-2 at 16. Hollingsworth filed this lawsuit before the inspection could take place.

After the case was filed, LM hired another engineer to inspect the home. With the understanding that Hollingsworth considered her property to be a total loss, the engineer performed a visual and photographic survey of the house.  He concluded, in a report detailing his observations, that in his "professional opinion" Hollingsworth's home was "not damaged to the extent that it should be considered a total loss."  Doc. 24-8 at 7.

**B.    Procedural Background**

Hollingsworth brought this action against LM in the Middle District of Georgia for breach of contract and for bad faith regarding its duties under the

---

[2] The actual cash value represents the replacement cost value minus the depreciation of Hollingworth's property at the time of the fire and the applicable deductible.

insurance policy.  LM moved for summary judgment, arguing that it had complied with the terms of the insurance policy because Hollingsworth's home was not "wholly destroyed" under Georgia law, O.C.G.A. § 33-32-5(a), and that it did not act in bad faith because it paid Hollingsworth as required by the terms of the policy.  The district court agreed and granted LM's motion.  This appeal followed.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party.  *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017).  Summary judgment is appropriate if the movant demonstrates that there is no genuine issue as to any material fact and is entitled to judgment as a matter of law.  *Id.*; Fed. R. Civ. P. 56(a).  "[U]nsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (alterations adopted) (internal quotation marks omitted).  "[T]here must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III.    DISCUSSION

### A.    Breach of Contract

In order to prove a breach of contract claim under Georgia law, a plaintiff must demonstrate:  (1) a valid contract, (2) breach of that contract, and (3) damages caused by the breach.  *See Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1339 (11th Cir. 2004).  Hollingsworth alleged that "failure to pay the replacement cost [of her home]" was a breach of the insurance contract.  Doc. 1 at 3.  She based this allegation on Georgia's Valued Policy Statute, which provides that the insurance policy limit of a one- or two-family residential building or structure is "taken conclusively to be the value of the property" whenever the property is "wholly destroyed" by fire without fraudulent or criminal fault by the policyholder or her agent.  O.C.G.A. § 33-32-5(a).  The statute, which is intended to protect property owners from the burden of proving the value of property after it has been wholly destroyed, entitles a property owner to recover the policy limit. *Marchman v. Grange Mut. Ins. Co*., 500 S.E. 2d 659, 661 (Ga. Ct. App. 1998)  As explained below, this statute does not apply to Hollingsworth's claim because she has provided no evidence that her home was wholly destroyed.  Thus, LM did not breach the insurance policy by paying the actual cash value of the claim and committing to pay the repair costs rather than paying the policy limit.

7

Georgia law does not define "wholly destroyed," but two cases from the Georgia Court of Appeals are instructive.[3]  The first case is *Allstate Insurance Co. v. Baugh*, 327 S.E. 2d 576 (Ga. Ct. App. 1985).  In *Baugh*, the insurer contended that the trial court erred in charging the jury on Georgia's Valued Policy statute, arguing that such a charge was unauthorized by the evidence.  The court disagreed, noting that because there was "*at least some evidence of record* that appellees' home was totally destroyed," the trial court's charge was appropriate.  *Id*. at 579 (emphasis added).

The second case is *Georgia Farm Bureau Mutual Insurance Co. v. Brown*, 385 S.E. 2d 87 (Ga. Ct. App. 1989).  In *Brown*, the Georgia Court of Appeals reviewed a trial court's denial of an insurer's motion for judgment notwithstanding a jury's verdict awarding the plaintiff the policy limits when a fire "destroyed" his home.  The Court of Appeals held that because the evidence demonstrated that the cost of repair was higher than the cost of replacement, and photos demonstrated that the house "was substantially gutted by the fire," the trial court correctly denied the insurer's motion.  *Id.* at 90.  The evidence on record in this case falls short of that in *Baugh* and *Brown*:  It failed to demonstrate that Hollingworth's home was

---

[3] When determining the law of Georgia, this Court must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issues otherwise. *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).

substantially gutted or that the cost of repair was higher than the cost of replacement.

Hollingsworth contends that several pieces of evidence precluded summary judgment on the issue of whether her home was wholly destroyed:  photographs showing substantial damage to her dining room, evidence of extensive smoke damage, and her statements in her deposition describing the home as wholly destroyed.  Taken together, this evidence failed to establish a genuine issue of material fact as to whether her home was wholly destroyed under Georgia's Valued Policy Statute.  The photographs of Hollingsworth's home taken two weeks after the fire showed that only three of the home's seven rooms sustained any damage, with only two of those rooms having suffered any significant damage. None of the other rooms in the home showed visible fire damage.  Such damage falls short of the "substantial[] gutting" described by *Brown*.  That there was smoke damage—for which Hollingsworth's chosen contractor quoted a repair cost—also does not suggest that Hollingsworth's home was wholly destroyed. Hollingsworth presented no evidence other than her own testimony that the extent of the smoke damage amounted to a "wholly destroyed" home.  The evidence that her chosen contractor included the smoke damage in his repair cost cuts against this notion.

Hollingsworth also contends that her assertions in her deposition that the home was wholly destroyed sufficed to withstand summary judgment. But the deposition testimony on which she relies merely details Hollingsworth's view of the how the smoke damage and the photographs establish that her home was wholly destroyed. As discussed above, the photographs and evidence of smoke damage fall short. Her deposition testimony is therefore not enough to establish a genuine issue of material fact as to whether her home was wholly destroyed. Accordingly, the district court did not err in granting summary judgment in LM's favor on Hollingsworth's breach of contract claim.[4]

## B.    Bad Faith

Under Georgia law, if an insurer in bad faith refuses to pay a valid insurance claim within 60 days after a payment demand has been made by the policyholder, the insurer is liable for the loss, up to 50 percent of the liability of the insurer for the loss, and all reasonable attorneys' fees for the prosecution of the action against the insurer. O.C.G.A. § 33-4-6(a); *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 864 (11th Cir. 1998). Georgia courts have interpreted this statute to

---

[4] Hollingsworth contends that the district court conflated her breach of contract claim with her claim seeking application of Georgia's Valued Policy statute, and even if the home could not be deemed "wholly destroyed," LM was in breach of the insurance contract by paying her claim based on its own estimate rather than the higher estimate of Hollingworth's selected contractor. But she did not advance this theory of liability in the district court. Nor does her complaint support this theory. Because Hollingsworth raised this new theory for the first time on appeal, we decline to address its merits. *See Access Now, Inc. v. SW Airlines Co.*, 385 F.3d 1324, 1334-35 (11th Cir. 2004).

impart liability to an insurance company "when it fails to pay a covered loss within 60 days after a demand for payment has been made and there has been a finding that the refusal to pay was in bad faith." *Brown v. Ohio Cas. Ins. Co.*, 519 S.E. 2d 726, 727 (Ga. Ct. App. 1999). Because there is no genuine issue of material fact as to whether LM paid Hollingsworth's claim—it did—the district court did not err in granting summary judgment in LM's favor.

Hollingsworth argues that LM acted in bad faith by: (1) terminating payment for her living expenses after 10 months, even though experts advised that 10 to 12 months were needed to complete repairs, (2) intentionally excluding the smoke damage in an attempt to lower the repair cost, (3) refusing to return to her home to conduct an inspection when the presence of smoke damage behind the walls became known, and (4) pressuring her selected contractor to agree to complete the repairs for a lower price than was estimated to Hollingsworth. She contends that on account of these actions, LM failed to pay the actual loss to which she was entitled under the insurance policy.

As an initial matter, the terms of the insurance policy required that LM pay Hollingsworth the actual cash value of the damage to the home before the completion of repairs, which it did. That LM paid Hollingsworth for the covered loss is enough to defeat the bad faith claim. Also in LM's favor is the fact that the evidence does not support Hollingsworth's characterization of LM's actions.

11

Regarding the living expenses, Hollingsworth's insurance policy stated that LM would pay her additional living expenses for the shortest time required to complete repairs, which it estimated was only approximately six months. The record demonstrates that Hollingsworth had not started repairs as of eight months after the fire. And Hollingsworth provides no authority in support of her argument that, given the language of the insurance policy, suspending these living expenses was in bad faith. Therefore, we cannot conclude LM acted in bad faith by halting the payments for Hollingsworth's living expenses.

As to Hollingsworth's contentions that LM intentionally excluded the smoke damage to lower the repair cost estimate and that it refused to return to her home to inspect once smoke damage became known, she provides no evidence in support. To the contrary, the record established that LM agreed to work with Hollingworth's chosen contractor to reach an agreement as to the scope of the damages and subsequent repair, including the smoke damage. This effort was ongoing when Hollinsworth filed this action. Thus, the evidence fails to establish bad faith on LM's part.

Lastly, as to Hollingsworth's suggestion that LM pressured her selected contractor to complete the repairs at a reduced cost, she provides no evidence to support this assertion. Thus, she cannot establish bad faith on LM's part. *See Cordoba*, 419 F.3d at 1181.

12

The district court did not err by granting summary judgment to LM on Hollingsworth's bad faith claim because there was no genuine issue of material fact that she was entitled to more than the cost of the repairs LM was willing to make and the actual cash value, which LM paid 34 days after her payment demand.[5]

## CONCLUSION

For the reasons set forth above, we affirm the district court's grant of summary judgment in LM's favor.

**AFFIRMED.**

---

[5] Hollingsworth contends that the district court improperly weighed the evidence in reaching its decision. But our review is *de novo*, and as discussed above, the evidence fails to establish a genuine issue of material fact as to either of Hollingworth's claims.

13