[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11659
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-03856-SCJ

GREAT AMERICAN INSURANCE COMPANY,

                                                        Plaintiff - Appellant,

versus

MOORE FREIGHT SERVICE, INC.,
JOHN TEAL,
COLONIAL CARTAGE CORPORATION,
GHULAM KHAN,
MICHAEL T. SMITH,
as conservator for Ehsan Khan,

                                                        Defendants - Appellees,

JRM LOGISTICS, INC., et al.,

                                                        Defendants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(June 8, 2018)

Before MARCUS, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this declaratory judgment action, Great American Insurance Company ("Great American") appeals the district court's grant of summary judgment in favor of Michael T. Smith (as conservator for Ehsan Khan) and Ghulam Khan (collectively, the "Khans"). No reversible error has been shown; we affirm.

This civil action is a state-law case. And the facts largely are undisputed. On 6 February 2013, John Teal drove a tractor-trailer through a red light and collided with a car in which the Khans were riding. Both Mr. and Mrs. Khan were injured as a result of the collision, with Mr. Khan having suffered severe life-altering injuries.

At the time of the collision, Teal was employed by Moore Freight Service, Inc. ("Moore Freight") and was driving the tractor-trailer within the scope of his employment. Moore Freight owned the tractor Teal was driving. The attached

2

trailer Teal was hauling, meanwhile, was owned by Colonial Cartage Corporation ("Colonial Cartage") but was being used with Colonial Cartage's permission.

The Khans filed a personal-injury tort action in Georgia state court against Moore Freight, Teal, Colonial Cartage, and Moore Freight's insurer. In the underlying tort action, the parties stipulated that Teal was 100% at fault in causing the collision. Following a jury trial, the state court entered judgment in favor of the Khans and awarded the Khans over $17 million in damages.

At all pertinent times, Colonial Cartage was a named insured in a Liberty Mutual Fire Insurance Company policy ("Liberty Mutual Policy"), which provided automobile liability insurance with a policy limit of $2 million. Colonial Cartage was also a named insured in a commercial umbrella insurance policy issued by Great American ("Great American Policy"). The Great American Policy provided excess automobile liability coverage to "insureds" covered under the primary Liberty Mutual Policy, and the Policy provided for a per occurrence policy limit of $10 million.[1]

Great American filed this declaratory judgment action, seeking a declaration that Moore Freight and Teal were not "insureds" under the Liberty Mutual Policy and, thus, were not covered by the Great American Policy. Great American and

---

[1] Moore Freight's insurer paid its policy limit of $1 million. Liberty Mutual also paid its policy limit of $2 million to the Khans.

the Khans both filed motions for summary judgment; the district court denied

Great American's motion and granted summary judgment in favor of the Khans.

We review de novo a district court's grant of summary judgment. Holloman

v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). "Summary judgment is

appropriate when the evidence, viewed in the light most favorable to the

nonmoving party, presents no genuine issue of material fact and compels judgment

as a matter of law in favor of the moving party." Id. at 836-37.

The interpretation of a provision in an insurance contract is a question of law

subject to de novo review. Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219

(11th Cir. 2015). Under Georgia law, "[a]n insurance policy is governed by the

ordinary rules of contract construction." Banks v. Bhd. Mut. Ins. Co., 686 S.E.2d

872, 874 (Ga. Ct. App. 2009). Whether the language in an insurance policy is

ambiguous is a matter of law for the court to decide. Id. "When the language of

the policy is unambiguous and capable of but one reasonable construction, we

enforce the contract as written." Id. "Where a term of a policy of insurance is

susceptible to two or more constructions . . . such term is ambiguous and will be

strictly construed against the insurer as the drafter and in favor of the insured." Ga.

Farm Bureau Mut. Ins. Co. v. Meyers, 548 S.E.2d 67, 69 (Ga. Ct. App. 2001).

This dispute centers on the interpretation and application of a single

provision of the Liberty Mutual Policy. Section II, Part A.1.b. of the Liberty

4

Mutual Policy provides that an "insured" includes "[a]nyone . . . while using with your permission a covered 'auto' you own, hire or borrow. . . ."  In Part A.1.b.(1), the Liberty Mutual Policy then excepts from the definition of "insureds" "[t]he owner, or any 'employee', agent or driver of the owner, or anyone else from whom you hire or borrow a covered 'auto'."[2]  That both the tractor and the trailer each qualify as an "auto" under the Liberty Mutual Policy is undisputed.

Great American's arguments in the district court stemmed from its underlying assertion that the trailer played no part in the collision.  Accordingly, Great American focused on the tractor as being the pertinent covered "auto" under the Liberty Mutual Policy.  Briefly stated, Great American argued that because the tractor was owned by Moore Freight and operated by a Moore Freight employee, Moore Freight and Teal were not "insureds" under Part A.1.b.[3]  Great American also asserted generally that Moore Freight and Teal's use of Colonial Cartage's trailer -- even with Colonial Cartage's permission --would not bring them within

---

[2] In this context, the terms "you" and "your" refer to Colonial Cartage.

[3] Great American presented two alternate theories in the district court: (1) that Colonial Cartage did not own, hire or borrow the tractor and, thus, Part A.1.b. was inapplicable; and (2) that even if Colonial Cartage hired or borrowed the tractor, Moore Freight and Teal fell within the exception under Part A.1.b.(1) because the tractor was owned by Moore Freight and was driven by a Moore Freight employee.  Because Great American presented both theories in the alternative, we reject the assertion that Great American is now bound by its earlier assertion that it did not hire or borrow Moore Freight's tractor.  We also reject the argument that Great American failed to preserve properly its argument on appeal.

the scope of coverage under the Liberty Mutual Policy because the trailer was not involved in causing the collision.

The district court rejected properly Great American's argument that the trailer played no role in the 6 February 2013 collision. "[N]early every jurisdiction to face the question has held that an accident involving a tractor/trailer unit arises out of the use of both regardless of which part of the unit was actually involved in the accident." Blue Bird Body Co. v. Ryder Truck Rental, Inc., 583 F.2d 717, 727 (5th Cir. 1978) ("Where truck and towed trailer are involved in an accident, the courts are well-advised to avoid the metaphysics and hold that the accident arose out of the use of each.").

The district court also determined that, because Moore Freight and Teal were using a trailer owned by Colonial Cartage (with Colonial Cartage's permission) they each qualified as an "insured" under Part A.1.b. of the Liberty Mutual Policy. Moreover, because Colonial Cartage owned the trailer -- and did not hire or borrow it -- the exception in Part A.1.b.(1) did not apply.

On appeal, Great American raises no direct challenge to these rulings in the district court. Instead, as we understand it, Great American's argument on appeal is that -- because Moore Freight and Teal fell within the Part A.1.b.(1) exception with respect to their use of the tractor -- they are not "insureds" under the Liberty Mutual Policy, even with respect to their use of the trailer.

6

In making this argument, Great American concedes that Moore Freight and Teal qualified as "insureds" under Part A.1.b.'s initial grant of coverage because they were using Colonial Cartage's trailer with Colonial Cartage's permission. Great American then argues, however, that the exception in Part A.1.b.(1) plainly applied to Moore Freight and to Teal because Moore Freight owned the tractor that had been hired or borrowed by Colonial Cartage.  Then -- without differentiating between the use of the tractor or the trailer -- Great American asserts that Moore Freight and Teal's triggering of the exception in Part A.1.b.(1) acted to negate entirely the initial grant of coverage under Part A.1.b.

Nothing in the language of the Liberty Mutual Policy provides unambiguously that a person or entity that falls within the Part A.1.b.(1) exception with respect to the use of one covered "auto" is then excepted automatically from coverage under Part A.1.b. with respect to the use of all other covered "autos."  To the extent that Part A.1.b. may be susceptible to more than one reasonable interpretation, we must construe the policy language in favor of coverage and against the policy's drafter.  See Meyers, 548 S.E.2d at 69.

That Moore Freight and Teal were using Colonial Cartage's trailer with Colonial Cartage's permission is undisputed.  Construing the Liberty Mutual Policy in favor of coverage, Moore Freight and Teal qualified as "insureds" under the Liberty Mutual Policy with respect to their use of the trailer, independent of

7

whether they also qualified as "insureds" based on their use of Moore Freight's tractor.  Because the 6 February 2013 collision is deemed to have arisen out of the use of both the tractor and the trailer, the collision was covered under the Liberty Mutual Policy.  So, coverage also exists under the Great American Policy for amounts in excess of the policy limits of the Liberty Mutual Policy.

AFFIRMED.